US DISTRICT COURT                                 **Deleted:** SUPREME

SOUTHERN DISTRICT OF NEW YORK                   **Deleted:** COUNTY

| | |
|---|---|
| David Chasman, Haim Seth Chasman; Plaintiffs<br><br>v.<br><br>JPMorgan Chase Bank, NA<br>Chase Bank, and related subsidiaries, Successor by merger of First National Bank of Chicago<br><br>Defendants | ) FIRST AMENDED<br>) COMPLAINT<br>)<br>) HONORABLE NAOMI REICE<br>) BUCHWALD<br>)<br>) CASE 1:18-CV-06681 – NRB<br>)<br>) |

**Deleted:** SUMMONS AND

## COMPLAINT
## BREACH OF CONTRACT
## AND FIDUCIARY DUTY

      Plaintiffs Haim Seth Chasman and David Chasman allege, on information and belief, through their attorney, Stuart Weichsel, the following complaint against the following defendants the JPMorgan Chase Bank, NA, Chase Bank, and related subsidiaries, if any:

.

**Jurisdiction and Venue**

1. This is an action for enforcement of a contract and breach of fiduciary duty.
2. Haim Seth Chasman and David Chasman are the beneficial owners and beneficiaries of an IRA account at JPMorgan Chase inherited from their late mother Rose Ann Chasman.
3. JPMorgan Chase NA is an Ohio corporation with its world and U.S. headquarters in New York, NY. (sourced from New York State Secretary of State, Principal Executive Office: JPMorgan Chase Bank, N.A. 270 Park Avenue, 38th Flr New York, New York, 10017).
4. Based on the location of the defendant, jurisdiction is proper in New York County, New York State.

**Deleted:** individuals and

**Deleted:** beneficiares

**Deleted:** a Delaware

**Parties**

5. JPMorgan Chase et. al. Is the successor in interest by merger of First National Bank of Chicago, formerly a federally chartered bank based in Chicago Illinois.  First National Bank of Chicago was later merged with Bank One N.A., which was later merged and acquired by Defendant JPMorgan Chase.

**Introduction**

6. On or about 1983, First National Bank of Chicago advertised and offered three-year Certificates of Deposit offering a fixed and automatically renewing rate of 12 percent per annum – an evergreen renewal provision.
7. Rose Ann Chasman, along with her husband, Richard Roy Chasman, ("Original Depositors") accepted signed up for Individual Retirement Accounts and deposited $3,000 each, and invested the IRA assets in the Certificates of Deposit offered by First National Bank of Chicago.
8. At each renewal time thereafter, the Certificates of Deposit within the IRA accounts were renewed at the same interest rate while held by First National Bank of Chicago.
9. As interest rates came down during the 1980s, this automatic renewal rate was contested by First National Bank of Chicago.
10. This dispute was resolved in favor of the IRA account held for Ms. Rose Chasman, and the bank issued a letter clarifying the terms of the contract. This letter, Exhibit A, reads in relevant part, "Therefore, let me assure you that First Chicago will honor its commitment as originally understood by you. I will personally see that your three year CD receives a minimum rate of 12% for all future renewals of the three year term."
11. While this assurance is not as clear as either party would like, it is an assurance that the CD shall receive its 12 percent "Evergreen" rate.  This assurance is not limited to the life of Ms. Chasman, but instead refers to the "CD," which is a contract or security.
12. After Bank One acquired by merger First National Bank of Chicago, Rose Ann Chasman completed a new IRA application and agreement, but asserted her right to have the Certificate of Deposit maintained at the same rate since the CD remained an asset of the IRA (held by the bank as trustee or custodian).
13. This contractual right was protected and Bank One continued to honor the preferential interest rate.

14. Finally, when Bank One was acquired by Chase, Chase again continued to honor the Evergreen preferential contractual rate honored by First National Bank of Chicago and Bank One.
15. Finally, when Rose Chasman passed away in 2007, the Plaintiffs were the listed beneficiaries of IRA account, and appropriately requested the transfer of the CDs to beneficiary IRA accounts in their own names.
16. Pursuant to the specific instructions attached as an Addendum and accepted (and signed) by the Defendant as part of the "Traditional IRA Election of Payment by Beneficiary" the preferential rate contracts were transferred to the IRAs held for the benefit of the Plaintiffs.  (See JPM Bates Stamp 21 and 35, each of which was accepted/ signed by an officer of JP Morgan Chase Bank. NA. )
17. In pertinent part, the modification to the contract reads "These [sic] contract bear [sic] a coupon or [of] 12% or so, which we expect to be transferred to us (50% to each of us)." See Exhibit B, pages JPM Bates Stamp pages 21-35, which include both contract documents.
18. Defendants correctly transferred not the dollar value of the "balance" of a bank account, but the actual "Certificate of Deposit" contract at the 12 percent evergreen interest rate.
19. These CDs were then correctly renewed at the 12 percent rate in each of the beneficiary accounts held by the Plaintiffs in 2009, pursuant to the Addendum to the contract.
20. It is only in 2012 when these CDs were subject to automatic renewal again in subject to the Evergreen interest rate contract provision that the Defendants refused to honor the contractual commitment.
21. The Certificates of Deposit were due to renew under the Evergreen provision again in 2015 and 2018, and at each successive 3-year renewal date the Defendants failed and refused to correctly renew the contract.
22. In 2012 and 2013, following the failure of the Defendants to properly renew the contract terms, the Plaintiffs engaged in a discussion with Chase Retirement Services and the Legal Department of JP Morgan Chase Bank N.A. (See Chasman letters dated April, May and June 2013 to Sita Govindan, Chase Retirement Services, Stephen Cutler, General Counsel, JP Morgan Chase Bank N.A., and Sondra D. Simmons, Vice President and Assistant General Counsel JP Morgan Chase & Co., marked as Plaintiff Exhibits ___).

When these appeals and discussions were unsuccessful, the Plaintiffs contacted the New York State Dept of Finance.

23. When these efforts were unsuccessful by the close of 2014, the Plaintiffs were forced to contemplate other options, including challenging these decisions in litigation.

24. While some IRA's hold various securities such as stocks, bonds, or mutual funds (which are actually shares in corporation), these IRAs held Certificates of Deposit, which are contracts between the bank as a counterparty and the IRA beneficiary.  In all cases, these contracts or securities are held by a custodian. (https://en.wikipedia.org/wiki/Individual_retirement_account#Restricted_investments)

> Deleted: , the IRAs created by the Original Depositors
> Deleted: /
> Deleted: himself.

25. Just as an IRA custodian can and does distribute assets such as securities in an in-kind trustee to trustee transfer, the rollover of the Certificates of Deposit to the Beneficiary IRAs pursuant to a legally binding beneficiary designation was (and should have been) in-kind as well.  The asset being transferred in-kind is Certificate of Deposit contract (with its valuable contractual terms) to the beneficiary IRAs of the Plaintiffs.

26. Defendants, as counterparty on the contract distributed, have fraudulently attempted to unilaterally modify the binding contractual terms of the Certificate of Deposit after correctly transferring it, and they have represented without contractual basis that the Certificate of Deposit contract rights did not transfer from the IRA account of Rose Ann Chasman to the beneficiary IRA accounts.

> Deleted: on transfer
> Deleted: /or

27. Defendants make this claim after a bank official signed the contract documents described above and correctly implemented this contract by transferred the Certificate of Deposit "contract" to the beneficiaries in July and September 2008.

28. It is difficult for the Defendants to argue that after an officer of the bank SIGNED a contract to transfer the "Certificate of Deposit" held in the decedent's IRA account, and then properly executing on the disputed contract terms, that ALL of the terms of the contract did not transfer. To flagrantly deny and breach a contract after performing it for over 30 years, and after confirming the transfer of the contract both in writing and by performance, is a flagrant breach of contract.

29. In discussions in open court Defendants admit that the automatic renewal or "roll over" provisions of the contract are not disputed, but only the interest rate. For that reason, Plaintiffs allege that the contracts were breached again in 2015, and again in 2018, when

the Defendants renewed the Certificates of Deposit, but failed to do so at the preferential rate that they granted over 30 years ago and confirmed and renewed on transfer in 2008.

30. Because these 2015 and 2018 breaches of the 2008 and previous contracts are ongoing wrongs, Plaintiffs believe that the "Continuous Violations / Wrongs Doctrine" should apply, and the claims should extend back to the 2012 breaches of contract.

31. Because the Plaintiffs contested the breach from 2012 through the present, they did not waive this contractual provision.

## FIRST CLAIM
## BREACH OF CONTRACT   - SPECIFIC PERFORMANCE AND, IN THE ALTERNATIVE  MONETARY COMPENSATION

32. Plaintiffs restate paragraphs 1- 31, as if stated herein.

33. As stated above Plaintiffs are the beneficial owners of beneficiary IRAs inherited from Rose Ann Chasman that contain, or should contain, Certificates of Deposit with favorable interest rates.  These Certificates of Deposit are the valuable contractual assets transferred in-kind from the decedent's Traditional IRA.

34. Defendants correctly and appropriate renewed these Certificates of Deposit according to their terms in 2009, pursuant to the contract term clarified in Exhibit A, and the transfer of this term of the CD contracts to the beneficiary IRAs, as clearly stated in Exhibit B.

35. In 2012 the Defendants breached the terms of these contracts and refused to renew these contracts, committing a substantial breach of contract that destroys the benefit of the bargain of the evergreen contracts to Plaintiffs.

36. In 2015, and 2018, Defendants again breached this contract, at the time for renewal of the three-year CD.

37. Plaintiffs refer specifically to the explicit statement of the contract term known as the "Evergreen Confirmation Letter", stating that the decedent, Ms. Rose Chasman, would receive this interest rate.

38. While as a matter of law, the contractual terms of any securities or contracts held in an account transfer to beneficiaries as a matter of law, this was confirmed by the in the

[Deleted: JPMorgan Chase et al]
[Deleted: .]

contract signed between each of the Plaintiffs and the JP Morgan Chase Bank. JP Morgan Chase Bank signed these contracts on February 2, 2009 (by David Figueroa) with Plaintiff David Chasman, and on September 9, 2009, by Officer Young, with Plaintiff Haim Chasman.

39. Regarding the past breach of the contract in 2012, 2015, and 2018, Plaintiffs seek monetary damages equal to the difference between the interest rate paid and the contractual interest rate required.

40. In the alternative, Plaintiffs also seek specific performance, and pray that the Court order the reinstatement of the contract for both past and future renewals.

41. Plaintiffs pray that the Court award the Plaintiffs specific performance and re-instate the terms of the original contracts according to their terms, permitting evergreen renewal of the Certificates of Deposit at the rate originally provided, 12 percent per annum.

42. In the alternative, Plaintiffs ask for a monetary award for breach of contract for the loss of all future interest payments at the proper higher 12 percent interest rate. This monetary compensation equals the present value of the compounded stream of interest payments and principal payments for the next 80 years.

43. In summary, Plaintiffs seek monetary damages and/or specific performance for past, current, and future breaches of the contracts between Defendants and Plaintiffs, with (Chase Retirement Services acting as custodian).

**SECOND CLAIM – BREACH OF FIDUCIARY DUTY OF CUSTODIAN**

44. Plaintiffs restate paragraphs 1- 43, as if stated herein.

45. One of the Defendant affiliates acted and acts as "Custodian" of the assets – the Certificates of Deposit – held by both the transferor decedent's IRA and the transferee Beneficiary IRAs.

46. Acting as Custodian, the Defendant had the fiduciary duty to maintain the safety and security of the assets held by the Custodian, including the duty to act with due care in the in-kind transfer of the Certificates of Deposit, without permitting the unilateral alteration of the contracts.  (See UBS Financial Services, Inc. v. Donna M. Aliberti, Mass., Oct. 2018, finding a fiduciary duty for a Custodian under New York law).

47. The Defendant permitted the alteration of the contract terms of the Certificates of

Deleted: prays
Deleted: awards the
Deleted: Plaintiff further prays that
Deleted: Court
Deleted: Plaintiff
Deleted: , amounting to the difference between the amount of interest paid on the Certificates of Deposit currently held by the Beneficiary IRAs and order
Deleted: – that  the defendant pay the true and correct 12 percent per annum interest rate on a court modified asset.
Deleted: FIDICUARY
Deleted: Plaintiff realleges all of the facts stated above in
Deleted:  through 19.
Deleted: The Defendants JP Morgan Chase et al
Deleted: <#>The Defendant alleges to have permitted the alteration of the contract terms of the Certificates of Deposit, transferred, breaching its duty to maintain the value, safety, and security of the assets from extra-contractual and unilateral alteration by the contractual counter-party.¶

Deposit, transferred, breaching its duty to maintain the value, safety, and security of the assets from extra-contractual and unilateral alteration by the contractual counter-party.

48. If the Defendant acting as custodian did permit an alteration, in the contractual asset of the account, Defendant breached its duty to protect and maintain the account assets (specifically performance of the 12 percent renewal rate in 2012, 2015, and 2018) as a custodian and fiduciary and has caused substantial damages to the assets held in trust.

49. Defendant has and had a duty, Plaintiffs, allege that it breached that duty, said breach caused damage to the Plaintiffs, and said damages were substantial economic damages.

50. Since Defendants acting as custodian and Defendants acting as bank counterparty are one party or one economic duty, this court can order specific performance as well as economic damages.

51. While Defendants argue that any fiduciary duty was disclaimed and waived by contract between the parties.

52. Plaintiffs allege that this contract was certainly not negotiated between the parties since Plaintiffs (and most bank customers) do not have the resources to negotiate 40-page bank contracts, and banks would refuse to do so. This disclaimer or waiver of this duty cannot be binding as a contract of adhesion.

53. Furthermore, even if contractually agreed to, fiduciary duties are un-waivable by contract.[1]

**Comment:** Deleted: or fidiciuary

---

[1] See THE FIDUCIARY OBLIGATION AS THE ADOPTION OF ENDS, 56 Buff. L. Rev. 99. "Leading cases in agency, partnership, and other areas of fiduciary law, however, hold that one's status as an agent or partner depends not on terms the parties negotiated but rather on the court's objective view of the relationship. 50 Courts uphold fiduciary duties even where the parties negotiate detailed contracts and, in some cases, try to expressly disclaim fiduciary duties 51 Courts uphold a breach of fiduciary duty claim, and even award punitive damages derived from tort, while dismissing or ignoring contract claims 52 Underwriters of initial public offerings (IPOs), for example, can owe a fiduciary duty to an issuer, notwithstanding contrary contractual language between the underwriter and the issuer. In one case, underwriters allegedly under-priced securities sold in an offering in return for payments from the purchasers. Notwithstanding a negotiated contract between the parties, the court upheld the lead managing underwriter's extra-contractual fiduciary duty. The underwriter maintained that a relationship between an issuer and an underwriter is "an arms-length commercial relation from which fiduciary duties do not arise." The court, however, stated:

It may well be true that the underwriting contract, in which Goldman Sachs agreed to buy shares and resell them, did not in itself create any fiduciary duty. However, a cause of action for breach of fiduciary duty may survive, for pleading purposes, where the complaining party sets forth allegations that, apart from the terms of the contract, the underwriter and issuer created a relationship of higher trust than would arise from the underwriting agreement alone 53 This court looked beyond the

54. Plaintiffs pray that the Court awards the Plaintiffs specific performance and re-instate the terms of the original contracts according to their terms, permitting evergreen renewal of the Certificates of Deposit at the rate originally provided, 12 percent per annum.
55. Plaintiffs further pray, in the alternative, that the Court award the Plaintiffs monetary damages, amounting to the difference between the amount of interest paid on the Certificates of Deposit currently held by the Beneficiary IRAs and the correct 12 percent per annum interest rate, for both past and future interest payment since the breach of this fiduciary duty.

### THIRD CLAIM - IN THE ALTERNATIVE
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT 815 ILK'S 505/1, et seq

56. Plaintiffs restate paragraphs 1- 53, as if stated herein.
57. In the alternative, if Defendants prevail in an argument that the terms of the Certificates of Deposit for the Plaintiffs differ from the 12 percent Evergreen renewal as indicated on the Addendum to transfer agreement, the Plaintiffs argue that the terms of the transfer are deceptive and misrepresented, and assert the following claim.
58. This contract was originally entered in in Illinois with the First National Bank of Chicago and is covered under Illinois law.
59. Any alleged modification of the Certificate of Deposit on transfer from the decedent to the beneficiaries (to alter the interest rate from an evergreen 12 percent), was not clearly and conspicuously indicated, and thus was a deceptive change.  (Plaintiffs of course allege that no actual change in terms occurred.)
60.   Any such alleged change in interest rate occurred despite the clear written Addendum attached to the beneficiary account documents indicating that the contract is to be transferred without change in the evergreen interest rate.
61. This alleged deceptive change in term was made in course of trade or commerce.
62. Plaintiffs allege that the Defendants intended that the Plaintiffs rely on the deceptive

---

agreed terms for evidence of a fiduciary relationship. One cannot say the parties were unable to specify contractual terms because they did so. If fiduciary duties were wholly contractual, such extra-contractual fiduciary claims would not survive."

change in terms buried in documents, in contrast to the handwritten Addendum attached by Plaintiffs and accepted by the Bank.

63. Plaintiffs allege that all of the damages of Plaintiffs were caused by this alleged change, including, but not limited economic damages based on the difference in interest rate on both past renewals, 2012 to present, and future renewals.  Damages include, but are not limited to economic damages, emotional damages, loss of professional and personal time pursuing this matter with regulators and in litigation, and attorney's fees.  (Plaintiffs also request double or treble damages if available.)

64. Plaintiffs pray for just compensation and equitable relief from the Court, as described above.

## FOURTH CLAIM - IN THE ALTERNATIVE
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
## NEW JERSEY 5 N.J. Stat. Ann. § 56:8-1 et seq.

65. Plaintiffs restate paragraphs 1- 64, as if stated herein.

66. In the alternative, if Defendants prevail in an argument that the terms of the Certificates of Deposit for the Plaintiffs differ from the 12 percent Evergreen renewal as indicated on the Addendum to transfer agreement, the Plaintiffs argue that the terms of the transfer are deceptive and misrepresented, and assert the following claim.

67. The 2008 transfer of the Certificate of Deposit contract from the decedent's IRA account to Haim Chasman occurred while Plaintiff Haim Chasman was a resident in New Jersey.

68. To the extent the transfer of this contract is not governed by Illinois law, it is covered by New Jersey law.   ( See Bukowski v. Wells Fargo Bank, N.A. 757 Fed. Appx. 124 (2018)).

69. Any alleged modification of the Certificate of Deposit on transfer from the decedent to the beneficiaries (to alter the interest rate from an evergreen 12 percent), was not clearly and conspicuously indicated, and thus was a misleading, deceptive, and unlawful change. (Plaintiffs of course allege that no actual change in terms occurred.)

70.   Any such alleged change in interest rate occurred despite the clear written Addendum attached to the beneficiary account documents indicating that the contract is to be transferred without change in the evergreen interest rate.

71. This deceptive change in term was made in course of trade or commerce.

72. Plaintiffs allege that the Defendants intended that the Plaintiffs rely on the deceptive change in terms buried in documents, in contrast to the handwritten Addendum attached by Plaintiffs and accepted by the Bank.
73. Plaintiffs allege that all of the damages of Plaintiffs were caused by this alleged change, including, but not limited economic damages based on the difference in interest rate on both past renewals, 2012 to present, and future renewals.  Damages include, but are not limited to economic damages, emotional damages, loss of professional and personal time pursuing this matter with regulators and in litigation, and attorney's fees.  (Plaintiffs also request double or treble damages if available under the statute.)
74. Plaintiffs pray for just compensation and equitable relief from the Court, as described above.

### FIFTH CLAIM - IN THE ALTERNATIVE
### VIOLATION OF THE NEW YORK GENERAL OBLIGATION LAW SEC. 349

75. Plaintiffs restate paragraphs 1- 74, as if stated herein.
76. In the alternative, if Defendants prevail in an argument that the terms of the Certificates of Deposit for the Plaintiffs differ from the 12 percent Evergreen renewal as indicated on the Addendum to transfer agreement, the Plaintiffs argue that the terms of the transfer are deceptive and misrepresented, and assert the following claim.
77. Plaintiff David Chasman was resident in New York State at the time of the 2008 transfer of the Certificate of Deposit from the IRA account of decedent to the beneficiary IRA account established in his name.
78. The defendants offer and offered the banking, retirement, and custodial services to the public as consumer (instead of business) services.
79. The defendants allege that the interest rate term on the automatic renewal Certificate of Deposit was modified to market rate by the terms of the underlying documents, in spite of the specific typed terms of the documents indicating that the 12 percent renewal rate was to be retained.  Any such change in interest rate was misleading and deceptive in light of the typed addition to the contract (Addendum) signed and accepted by the Defendants.
80. Plaintiffs were materially harmed economically by this alleged deception.
81. Plaintiffs allege that all of the damages of Plaintiffs were caused by this alleged change,

including, but not limited economic damages based on the difference in interest rate on both past renewals, 2012 to present, and future renewals.  Damages include, but are not limited to economic damages, emotional damages, loss of professional and personal time pursuing this matter with regulators and in litigation, and attorney's fees.  (Plaintiffs also request double or treble damages if available under the statute.)

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against defendant as follows:

1. Plaintiffs pray that the Court awards the Plaintiffs specific performance and re-instate the terms of the original contracts according to their terms, permitting evergreen renewal of the Certificates of Deposit at the rate originally provided, 12 percent per annum.
2. Plaintiffs further pray that the Court award the Plaintiffs monetary damages, amounting to the difference between the amount of interest paid on the Certificates of Deposit currently held by the Beneficiary IRAs and the correct 12 percent per annum interest rate.
3. Permanent injunction, ordering Defendants to reinstate the Certificate of Contract contracts with evergreen provisions as originally agreed, to return the Plaintiffs to their original position and enjoining Defendants from further attempts to modify the Certificate of Deposit contracts, and:

A. An award of monetary damages sufficient to compensate Plaintiff for the injuries suffered as a result of Defendant's wrongful conduct;
B. Double or treble damages if available under the applicable statute,
C. An award to Plaintiffs of their costs and reasonable attorney's fees expended in this action, and
D. An award of such other and further relief as the Court deems just and proper.

### Jury Demand

Plaintiff reserves the right to demand a trial by jury of all issues so triable.

Respectfully submitted,


/s/  Stuart Weichsel

Stropheus LLC

800 Third Avenue, 28th

New York NY 10022

Attorney for Plaintiff
917-562-4697
 Stuart.Weichsel@Stropheus.com
646-304-7959 (fax)
NY State Bar Number - 2630655

**Deleted:** 830

**Deleted:** Fifth Fl

**Deleted:** [Weichsel @ ]