UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DAVID CHASMAN and HAIM SETH
CHASMAN,

                    Plaintiffs,

       -against-

JPMORGAN CHASE BANK, N.A.
CHASE BANK, AND RELATED
SUBSIDIARIES, successor by merger of
FIRST NATIONAL BANK OF CHICAGO,

                    Defendants.
_____

No. 18-cv-6681 (NRB)


**DEFENDANT JPMORGAN CHASE BANK, N.A.'s MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ORIGINAL PLEADINGS AND IN OPPOSITION TO PLAINTIFFS' MOTION <u>FOR LEAVE TO FILE A PROPOSED AMENDED COMPLAINT</u>**


BECKER, GLYNN, MUFFLY,
CHASSIN & HOSINSKI LLP
299 Park Avenue
New York, New York 10171

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................3

     A.     The Allegations of the Complaint ...........................................................3

     B.     The Answer ...............................................................................................4

     C.     The Allegations of the Proposed Amended Complaint ...........................5

     D.     The Documents Submitted on These Motions ..........................................7

          1.     The Establishment of the Beneficiary IRA CDs .........................7

          2.     The Deposit Account Agreement & the IRA Custodial Agreement...........7

          3.     The Account Statements & the 2012 Renewal Notices ..............9

ARGUMENT .............................................................................................................10

POINT I

THE COURT SHOULD GRANT CHASE'S MOTION FOR JUDGMENT ON THE
ORIGINAL PLEADINGS BECAUSE THE COMPLAINT FAILS TO STATE
VIABLE CLAIMS FOR RELIEF ............................................................................10

     A.     The Complaint Fails to State a Claim for Breach of Contract
               Because It Does Not Identify Any Provision of Any Contract that
               Has Been Breached .................................................................................11

     B.     The Complaint Fails to State a Claim for Breach of Fiduciary Duty.....14

     C.     Plaintiffs' Claims Are Time-Barred Under Applicable
               Statutes of Limitations ...........................................................................15

     D.     Plaintiffs' Claims Are Time-Barred by the Contractual
               Limitations Period ..................................................................................17

POINT II

THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR LEAVE TO
AMEND THE COMPLAINT BECAUSE THE PROPOSED AMENDMENTS
ARE ENTIRELY FUTILE ......................................................................................................18

     A.    The Proposed Amendments Relating to the Untimeliness of
           Plaintiffs' Claims Are Futile Because the "Continuing Wrong"
           Doctrine Does Not Apply ......................................................................................19

     B.    The Proposed Amendments Relating to Plaintiffs' Breach of
           Contract Claim Are Futile Because Plaintiffs Still Fail to
           Identify Any Contractual Provision that Chase Supposedly Breached ................21

     C.    The Proposed Amendments Relating to Plaintiffs' Breach of
           Fiduciary Duty Claim Are Futile Because They Fail to Invalidate or
           Vitiate the Contractual Disclaimer of Fiduciary Duty and Do Not
           Plead Facts Showing a Breach of Any Alleged Duty ...........................................23

     D.    The Proposed Amended Complaint's New Causes of Action—for
           Consumer Fraud and Deceptive Trade Practices—Are Legally Insufficient,
           and Leave to Replead Would Accordingly Be Futile ...........................................25

          1.    The Proposed New Claims Are Time-Barred ...........................................25

          2.    The Proposed Pleading Fails to State a Claim for Violation
               of the Illinois Consumer Fraud and Deceptive Business
               Practices Act, 815 Ill. Comp. Stat. Ann. § 505/1 *et seq*...........................27

          3.    The Proposed Pleading Fails to State a Claim for Deceptive Trade
               Practices in Violation of N.Y. Gen. Bus. Law § 349 .................................28

CONCLUSION...................................................................................................................29

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                          <u>Page</u>

*Amberger v. Legacy Capital Corp.*,
   No. 17 Civ. 532 (NRB), 2017 WL 4863093 (S.D.N.Y. Oct. 16, 2017) .................................. 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................. 10

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill. 2d 100 (Ill. 2005).......................................................................................... 27

*Bank of N.Y. v. First Millennium, Inc.*,
   607 F.3d 905 (2d Cir. 2010)...................................................................................... 10

*Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*,
   474 U.S. 361 (1986)................................................................................................. 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................. 10

*Belsito Commc'ns, Inc. v. Dell, Inc.*,
   No. 12-CV-6255 (CS), 2013 WL 4860585 (S.D.N.Y. Sept. 12, 2013) .................................. 22

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
   866 F. Supp. 2d 257 (S.D.N.Y. 2012)....................................................................... 14

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)...................................................................................... 11

*Cohen v. Mfrs. Trust Co.*,
   144 N.Y.S.2d 366 (Sup. Ct. N.Y. Cnty. 1955) ....................................................... 17

*Cohen v. Singer*,
   4 F. App'x 38 (2d Cir. 2001) ................................................................................... 18

*Crichton v. Golden Rule Ins. Co.*,
   576 F.3d 392 (7th Cir. 2009) ................................................................................... 27

*EBC I, Inc. v. Goldman, Sachs & Co.*,
   5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005)........................................................... 23, 24

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011)....................................................................... 12

*Estate of Warner v. Koo*,
  No. A-1367-16T3, 2018 WL 5289050 (N.J. Super. Ct. App. Div. Oct. 25, 2018)................... 18

*Felkay v. ZB Ltd. P'ship No. 1*,
  No. 81 Civ. 0289 (RWS), 1983 WL 1325 (S.D.N.Y. June 16, 1983) ...................................... 13

*First Am. Title Ins. Co. of N.Y. v. Fiserv Fulfillment Servs., Inc.*,
  No. 06 Civ. 7132(NRB), 2008 WL 3833831 (S.D.N.Y. Aug. 14, 2008) (Buchwald, J.)......... 20

*G&R Moojestic Treats, Inc. v. MaggieMoo's Int'l, LLC*,
  No. 03 Civ.10027(RWS), 2004 WL 1110423 (S.D.N.Y. 2004)............................................. 25

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016)..................................................................................................... 11

*Grgurev v. Licul*,
  No. 1:15-CV-9805-GHW, 2016 WL 6652741 (S.D.N.Y. Nov. 10, 2016)............................. 21

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996)....................................................................................................... 12

*Health-Chem. Corp. v. Baker*,
  915 F.2d 805 (2d Cir. 1990)..................................................................................................... 18

*Henry v. Bank of Am.*,
  147 A.D.3d 599, 48 N.Y.S.3d 67 (1st Dep't 2017) ........................................................... 19, 20

*Horvath v. Daniel*,
  423 F. Supp. 2d 421 (S.D.N.Y. 2006)...................................................................................... 19

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
  157 F.3d 933 (2d Cir. 1998)..................................................................................................... 22

*Jacobs v. Citibank, N.A.*,
  61 N.Y.2d 869, 474 N.Y.S.2d 464 (1984) .............................................................................. 25

*John J. Kassner & Co. v. City of N.Y.*,
  46 N.Y.2d 544, 415 N.Y.S. 785 (1979) ................................................................................... 17

*Kaplan v. Old Mut. PLC*,
  526 F. App'x 70 (2d Cir. 2013) ............................................................................................... 22

*Kazanjian v. Jamaica Sav. Bank*,
  105 Misc. 2d 228, 432 N.Y.S.2d 62 (Sup. Ct. N.Y. Cnty. 1980) ............................................ 13

*Klos v. Polskie Linie Lotnicze*,
    133 F.3d 164 (2d Cir. 1997).................................................................... 24

*Kremers v. Coca-Cola Co.*,
    712 F. Supp. 2d 759 (S.D. Ill. 2010)...................................................... 27

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
    10 F. Supp. 3d 504 (S.D.N.Y. 2014)........................................................ 14

*Levy v. Bessemer Trust Co., N.A.*,
    No. Civ. 1785 (JFK), 1997 WL 431079 (S.D.N.Y. Jul. 30, 1997) ........................................... 12

*Lucente v. Int'l Bus. Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002).................................................................. 13

*Maxine Co. v. Brinks Glob. Servs. U.S.A., Inc.*,
    No. 602233/05, 2010 WL 1856019 (Sup. Ct. N.Y. Cnty. Apr. 21, 2010),
    *aff'd sub nom. Maxine Co. v. Brinks's Glob. Servs. USA, Inc.*,
    94 A.D.3d 53, 937 N.Y.S.2d 199 (1st Dep't 2012) ........................................... 24-25

*McGuirk v. City Sch. Dist. of Albany*,
    116 A.D.2d 363, 501 N.Y.S.2d 477 (3d Dep't 1986) ...................................... 18

*Mindspirit, LLC v. Evalueserve Ltd.*,
    346 F. Supp. 3d 552 (S.D.N.Y. 2018).................................................. 19, 20

*MorEquity, Inc. v. Naeem*,
    118 F. Supp. 2d 885 (N.D. Ill. 2000) ..................................................... 26

*Murphy v. Morlitz*,
    751 F. App'x 28 (2d Cir. 2018) ............................................................. 16

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ................................................... 27

*N.Y. Univ. v. Cont'l Ins. Co.*,
    87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) ............................................... 28

*NN&R, Inc. v. One Beacon Ins. Grp.*,
    362 F. Supp. 2d 514 (D.N.J. 2005) ....................................................... 26

*Novak v. Overture Servs., Inc.*,
    309 F. Supp. 2d 446 (E.D.N.Y. 2004) ................................................... 25

*Okocha v. HSBC Bank USA, N.A.*,
    700 F. Supp. 2d 369 (S.D.N.Y. 2010)..................................................... 17

*Reyes v. City of N.Y.*,
    No. 10-cv-1838, 2012 WL 37544 (E.D.N.Y. Jan. 9, 2012)....................................... 10

*Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*,
    No. 10 Civ. 5999(GBD), 2013 WL 123727 (S.D.N.Y. Jan. 8, 2013)........................................ 19

*Roberts v. Babkiewicz*,
    582 F.3d 418 (2d Cir. 2009)..................................................... 10

*Roslyn Savings Bank v. National Westminster Bank USA*,
    266 A.D.2d 272, 699 N.Y.S.2d 421 (2d Dep't 1999)................................................. 20

*Rush Univ. Med. Ctr. v. Minn. Mining & Mfg. Co.*,
    No. 04 C 6878, 2007 WL 4198233 (N.D. Ill. Nov. 21, 2007)................................................. 26

*Sackin v. TransPerfect Glob., Inc.*,
    278 F. Supp. 3d 739 (S.D.N.Y. 2017)..................................................... 12

*Schandler v. N.Y. Life Ins. Co.*,
    No. 09 Civ. 10463 (LMM), 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011)............................ 26

*Schnall v. Marine Midland Bank*,
    225 F.3d 263 (2d Cir. 2000)..................................................... 16 n.4

*Seller v. Citimortgage, Inc.*,
    118 A.D.3d 511, 988 N.Y.S.2d 32 (1st Dep't 2014) ..................................... 28, 29

*Spirit Locker, Inc. v. EVO Direct, LLC*,
    696 F. Supp. 2d 296 (E.D.N.Y. 2010) ..................................................... 28

*Stutman v. Chem. Bank*,
    95 N.Y.2d 24, 709 N.Y.S.2d 892 (2002) ..................................................... 28

*Summit Props. Int'l, LLC v. Ladies Prof'l Golf Ass'n*,
    No. 07 Civ. 10407(LBS), 2010 WL 2382405 (S.D.N.Y. June 14, 2010)............................... 15

*T & N PLC v. Fred S. James & Co.*,
    29 F.3d 57 (2d Cir. 1994) ..................................................... 16

*Total Telcom Grp. Corp. v. Kendal on Hudson*,
    157 A.D.3d 746, 68 N.Y.S.3d 491 (2d Dep't 2018) ..................................................... 21

*Valentini v. Citigroup, Inc.*,
   837 F. Supp. 2d 304 (S.D.N.Y. 2011)...................................................... 14

*Wechsler v. HSBC Bank USA, N.A.*,
   674 F. App'x 73 (2d Cir. 2017) ............................................................... 17

*Wilson v. Dantas*,
   746 F.3d 530 (2d Cir. 2014)..................................................................... 10

*Wolff v. Rare Medium, Inc.*,
   171 F. Supp. 2d 354 (S.D.N.Y. 2001)...................................................... 12

<u>Statutes & Rules</u>

Fed. R. Civ. P. 12(b)(6)................................................................................. 10

Fed. R. Civ. P. 12(c) ................................................................................. 1, 10

Fed. R. Civ. P. 15........................................................................................ 18

Illinois Consumer Fraud and Deceptive Business Practices Act,
   815 Ill Comp. Stat. Ann. § 505/1 *et seq.*................................................ 27

   815 Ill. Comp. Stat. Ann. § 505/10a(e)................................................... 26

N.J. Stat. Ann. § 2A:14-1............................................................................. 26

N.J. Stat. Ann. § 12A:3-118(d)…………………………………………………16 n.5

N.Y. C.P.L.R. § 201 ..................................................................................... 17

N.Y. C.P.L.R. § 213(1) ................................................................................ 15

N.Y. C.P.L.R. § 213(2) ................................................................................ 15

N.Y. Gen. Bus. L. § 349 ................................................................... 26, 28, 29

N.Y. U.C.C. § 3-122(2)............................................................................ 16 n.5

<u>Other Authorities</u>

Williston on Contracts § 4:18, at 414 (4th ed. 1990)................................... 22

Defendant JPMorgan Chase Bank, N.A. ("Chase") submits this memorandum of law (i) in support of its motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), and (ii) in opposition to the motion of plaintiffs David Chasman and Haim Seth Chasman (together, "Plaintiffs") for leave to file a proposed first amended complaint (the "PAC").

## PRELIMINARY STATEMENT

In their original complaint (the "Complaint"), Plaintiffs allege that they are the beneficiaries of an individual retirement account certificate of deposit (the "IRA CD") previously held by their mother. They further allege that the IRA CD had an "evergreen" annual interest rate of 12%, supposedly meaning that it was automatically renewable at that 12% rate on a perpetual basis. They sue Chase on the extraordinary theory that, upon their mother's death, Chase was required, but failed, to transfer her IRA CD to them "in-kind" and to continue to apply the 12% rate to the Beneficiary IRA CDs they opened at Chase with money from their mother's IRA CD.

Judgment on the original pleadings in Chase's favor (and dismissing the Complaint) is warranted here for each of the following reasons independently: *First*, the Complaint fails to state any claim upon which relief can be granted. Plaintiffs' first cause of action, for breach of contract, fails because the Complaint fails to plead the terms of the contract allegedly breached and because there is no provision in the actual contracts between Chase and Plaintiffs that requires Chase to pay them 12% interest. Their second cause of action, for breach of fiduciary duty, fails because the custodial agreement applicable to Plaintiffs' accounts clearly and unequivocally disclaimed any fiduciary duty, and because the cause of action is predicated upon the same, unsustainable contractual theory, i.e., that Chase was required to pay them 12% interest and failed to do so. *Second*, the entire Complaint is time-barred under both the

applicable statutes of limitations and the two-year limitations period set forth in the account agreement governing Plaintiffs' CDs.

In the PAC, Plaintiffs attempt to rescue their claims by invoking the "continuing wrong" doctrine to toll the limitations periods; by pointing to 1991 correspondence to their mother regarding the 12% rate and to a so-called addendum that Plaintiffs annexed to the Chase form they used to withdraw the funds in their mother's IRA CD account; and by arguing that Chase's purported fiduciary duty could not be waived.  Plaintiffs also seek to add three new causes of action in the alternative, for consumer fraud and/or deceptive business practices under Illinois, New Jersey, and New York statutes.  They contend that any modification of terms in the "transfer" of the IRA CD from their mother to them resulted from Chase's having misled and deceived them.

But amendment would be futile here.  *First*, Plaintiffs' reliance on the continuing wrong doctrine is misplaced and would not cure the timeliness deficiency.  The automatic renewals of the Beneficiary IRA CDs in 2015 and 2018 at the then-standard interest rates (rather than at the 12% rate) do not constitute part of a series of independent wrongs each of which recommenced the limitations periods; rather, the non-application of the 12% rate in 2015 and 2018 was the result of Chase's single (alleged) wrong in 2012, when Chase refused to recognize supposedly applicable terms that allegedly would have necessitated application of the 12% rate on each successive renewal, in perpetuity.  *Second*, the documents that Plaintiffs point to do not identify any terms applicable to Plaintiffs' CDs that would be sufficiently specific for contractual enforcement.  The 1991 letter to Ms. Chasman says nothing about the applicability of the 12% rate to her beneficiaries, and the addendum is insufficiently specific to qualify as a contractual modification.  *Third*, Plaintiffs' arguments regarding fiduciary disclaimer and contract of

2

adhesion are legally and factually unsupported.  *Fourth*, the proposed new claims are all time-barred and, as to two of them, unsustainable as a matter of law for lack of standing and failure to allege the requisite consumer-oriented conduct.

For these reasons, the Court should grant Chase's motion for judgment on the pleadings and deny Plaintiff's motion for leave to amend.

## STATEMENT OF FACTS

### A.  The Allegations of the Complaint

According to the Complaint,[1] Plaintiffs are the beneficiaries of the IRA CD formerly held by their mother, Rose Ann Chasman ("Ms. Chasman").  Compl. ¶ 2.  Ms. Chasman allegedly opened the IRA CD at First National Bank of Chicago ("First Chicago") in or about 1983 with a $3,000 deposit.  *Id.* ¶¶ 7-8.  Plaintiffs claim that the IRA CD had an initial three-year term at a 12% per annum interest rate, and that it was renewable in perpetuity for three-year terms at the same 12% rate.  *Id.* ¶ 7.

The Complaint alleges that Ms. Chasman renewed the IRA CD at First Chicago and that, when that bank merged with Bank One, as to which Chase was later the successor-in-interest by merger, she completed a new IRA application and agreement, but asserted a right to the same interest rate on the IRA CD.  *Id.* ¶¶ 6, 10-11.

The Complaint further alleges that, following Ms. Chasman's death, Chase was required to transfer her IRA CD to the Plaintiffs, "in-kind," and to then apply to each of them the same terms applicable to that CD, i.e., renewable every three years in perpetuity at a 12% interest rate.  *Id.* ¶¶ 12, 14.  Although the Complaint alleges that there was, or should have been, an "in-kind" distribution of Ms. Chasman's IRA CD to Plaintiffs, the Complaint refers to Plaintiffs' post-

---

[1] A copy of the original Complaint is annexed as Exhibit 1 to the Declaration of Andrea Likwornik Weiss dated August 2, 2019 ("Weiss Decl.").

inheritance investments in the plural, as "IRAs" or "CDs," thus indicating that there was not an "in-kind" distribution, but rather that each of the Plaintiffs inherited a portion of the cash in Ms. Chasman's IRA CD and that each invested in new IRA certificates of deposit. *Id.* ¶¶ 12-13 (referring to Ms. Chasman's "IRA account" and Plaintiffs' "beneficiary IRA accounts"); ¶ 14 (alleging that Plaintiffs own "IRAs" inherited from their mother and that their accounts should contain "certificates of deposit").

Plaintiffs claim that Chase appropriately "renewed these Certificates of Deposit" in 2009 according to their terms (i.e., with a 12% interest rate), but that in 2012, Chase declined to renew the contracts at that interest rate. *Id.* ¶¶ 15-16. They contend that Chase's failure to renew each of their CDs at the 12% rate in 2012 "breached the terms of these contracts," destroying "the benefit of the bargain of the evergreen contracts to Plaintiffs." *Id.* ¶¶ 16, 18.

Based upon these allegations, the Complaint asserts two causes of action: (i) Breach of Contract – Specific Performance; and (ii) Breach of Fiduciary Duty of Custodian. Plaintiffs request that the Court award specific performance by reinstating "the terms of the original contracts according to their terms, permitting evergreen renewal of the [CDs] at the rate originally provided"—i.e., they ask the Court to direct Chase to pay each of them 12% interest every time their CDs roll over, in perpetuity. *Id.* ¶¶ 17, 26. They also seek monetary damages "amounting to the difference between the amount of interest paid on the [CDs] currently held by the Beneficiary IRAs and the correct 12 percent per annum interest rate." *Id.* ¶¶ 18, 27.

## B. **The Answer**

In its Answer, Chase admits that Plaintiffs were the designated non-spouse beneficiaries on a Traditional IRA Certificate of Deposit account that had been owned by Ms. Chasman and maintained at Chase. Weiss Decl., Ex. 2 at ¶ 2. Chase also acknowledges that after Ms.

4

Chasman's death, Plaintiffs' respective portions of the balance of funds in her IRA CD were transferred to separate Traditional Beneficiary IRA Certificate of Deposit accounts established at Chase in each of Plaintiffs' names, i.e., the Beneficiary IRA CDs. *Id*. In addition, Chase admits that it renewed the Beneficiary IRA CDs in 2009 at a renewal interest rate of 12% APY, but explains that the 12% rate was erroneously applied and that Plaintiffs had no legal right, by contract or otherwise, to receive 12% interest on the Beneficiary IRA CDs. *Id*. ¶¶ 15-16.

The Answer also sets forth defenses, including that the Complaint fails to state a cause of action (First Defense); that it is barred by the statute of limitations (Third Defense); that it is barred by the contractual limitations period set forth in Chase's Deposit Account Agreement governing the Beneficiary IRA CDs (Fourth Defense); and that it is barred by the terms and conditions of the Deposit Account Agreement or other agreements governing the Beneficiary IRA CDs (Fifth Defense). *Id*. ¶¶ 29-36.

### C. The Allegations of the Proposed Amended Complaint

One week before the due date for Chase's previously authorized motion for judgment on the pleadings, Plaintiffs decided to seek leave to amend what they no doubt had concluded was a patently defective Complaint. *See* ECF No. 23 – Order dated Feb. 27, 2019 (authorizing motion for judgment on the pleadings); ECF No. 25 – Order dated Apr. 10, 2019 (directing moving papers to be filed by May 17, 2019); ECF No. 26 – Letter from Plaintiffs to Court dated May 9, 2019 (requesting pre-motion conference in advance of motion for leave to amend).

The PAC adds the following key allegations. *First*, with regard to supposedly applicable contract terms, the PAC cites a January 1991 letter from a First Chicago account executive to Ms. Chasman stating that "I will personally see that your three year CD receives a minimum rate of 12% for all future renewals of the three year term." PAC ¶10. Plaintiffs contend that "[t]his

5

assurance is not limited to the life of Ms. Chasman." *Id.* ¶ 11.  Plaintiffs also cite a letter, which they call an "Addendum," that each of them attached to a Chase form entitled "Traditional IRA Election of Payment by Beneficiary." *Id.* ¶¶ 15-17.  Each so-called Addendum states that "[t]hese contract [sic] bear a coupon or [sic] 12% or so, which we expect to be transferred to us (50% to each of us)." *Id.* 17.  Plaintiffs contend that this represented a "modification to the contract" such that they transferred to their IRAs the "actual 'Certificate of Deposit' contract" with the 12% rate.  *Id.* ¶¶ 15-18.

*Second*, with regard to the supposed timeliness of their claims, Plaintiffs allege that Chase breached a purportedly applicable "Evergreen interest contract provision" not only in 2012, but also in 2015 and 2018, when the Beneficiary IRA CDs automatically renewed.  *Id.* ¶¶ 21, 29.  Based on this allegation, Plaintiffs invoke what they call the "Continuous Violations / Wrongs Doctrine," arguing that the alleged breaches in 2015 and 2018 were "ongoing wrongs" and that their claims "should extend back" to the alleged breaches of contract in 2012.  *Id.* ¶ 30.

*Third*, with regard to their breach of fiduciary duty claim, Plaintiffs allege that fiduciary duties may not be waived by contract and that, in any event, the contract governing the Beneficiary IRA CDs was a contract of adhesion.  *Id.* ¶¶ 51-53.

Plaintiffs also seek to add three new causes of action, for alleged violations of the Illinois, New Jersey, and New York consumer fraud and/or deceptive trade practices statutes.  *Id.* ¶¶ 56-81.  These new claims are asserted in the alternative, i.e., in the event that Chase prevails in arguing that the contractual terms applicable to the Beneficiary IRA CDs differ from the alleged "12 percent Evergreen renewal as indicated on the Addendum."  *Id.* ¶¶ 57, 66, 76.  According to the PAC, any modification of the contractual interest rate at the time of the "transfer of the Certificate of Deposit" from Ms. Chasman's IRA account to Plaintiffs' IRA accounts was

misleading, deceptive, and unlawful under these state statutes.  *Id.* ¶¶ 59, 69, 79.

**D.  The Documents Submitted on These Motions**

The documents submitted on these motions are summarized below insofar as relevant to the motions.

**1.   The Establishment of the Beneficiary IRA CDs**

On February 2, 2009 and again on August 11, 2009, David Chasman (as a "Beneficiary") submitted to Chase an executed "Traditional IRA Election of Payment by Beneficiary" form (the "Beneficiary Form").  Declaration of Richard Farmer dated July 31, 2019 ("Farmer Decl."), Exs. 1, 1A.  On September 9, 2008, Haim Chasman (as a "Beneficiary") submitted to Chase an executed Beneficiary Form.  Farmer Decl., Ex. 2.  The Beneficiary Form states that it is used "to request a *withdrawal* from a Traditional IRA . . . due to the death of a participant," *id.* at 1 (emphasis added); for each of the Beneficiary Forms, the "participant" was Ms. Chasman.  *Id*. In the "Beneficiary Acknowledgement" section of the Forms, each of the Plaintiffs expressly acknowledged that "[t]he Custodian [i.e., Chase] is authorized and directed to *distribute* from my share of the deceased's IRA in the manner requested above."  *Id.* at 3 (emphasis added).  Each of the Plaintiffs further acknowledged:  "I have received, read, and agree to the terms that govern my share as contained in the IRA Custodial Agreement and Disclosure Statement and *Account Rules and Regulations*."  *Id*.

**2.   The Deposit Account Agreement & the IRA Custodial Agreement**

Plaintiffs' Beneficiary IRA CD accounts were governed by a Deposit Account Agreement, sometimes known as (or contained within a document entitled) the "Account Rules and Regulations."[2]

---

[2] The Deposit Account Agreement that was in effect when the first of Plaintiffs' Beneficiary IRA CD accounts was established is annexed as Exhibit 1 to the Declaration of Laura L. Deck dated August 2, 2019 ("Deck Decl.").  The

The Deposit Account Agreement in effect when Haim Chasman opened his CD account provided specific terms regarding applicable interest rates:  "For automatically renewable CDs, your CD will automatically renew for the same time period as the initial term, and thereafter for successive like periods of time, *with an interest rate then in effect on the renewal date for like term CD to be applicable during such time period*."  Deck Decl., Ex. 1 at 11 (emphasis added).  The Deposit Account Agreement in effect when David Chasman opened his CD account contained an identical provision.  *Id.*, Ex. 2 at 11.  Both versions of the Deposit Account Agreement provided that Chase could change the terms of the Agreement from time to time, and that by maintaining an account after the effective date of the changes, the account holder agreed to be bound by such changes.  *Id.*, Exs. 1 at 17; 2 at 18.

The Deposit Account Agreement effective as of February 1, 2012 included an updated provision expressly requiring that any legal action against Chase by the account holder be commenced within two years from the date of accrual, unless otherwise provided by law:  "You must file any lawsuit or arbitration against us within 2 years after the cause of action arises, unless state law or an applicable agreement provides for a shorter time."  Deck Decl., Ex. 4 at 16 (§ I.9).  The Deposit Account Agreement specifies that, with respect to automatically renewable CDs, changes to the Agreement, such as the addition of the two-year limitations period, "will be effective on the [next] renewal date" of such CDs.  *Id.* at 15 (§ I.5).

Plaintiffs' Beneficiary IRA CD accounts were also governed by a Chase Traditional IRA Custodial Agreement and Disclosure Statement (the "Custodial Agreement").  The Custodial Agreements expressly disclaim any fiduciary relationship between Chase and CD account holders:  "By performing services under this Agreement we are acting as your agent.  You

---

Deposit Account Agreement was subsequently updated from time to time, as is indicated in the Deck Declaration. *See* Deck Decl., Exs. 2 – 7.

acknowledge and agree that nothing shall be construed as conferring fiduciary status upon us." Farmer Decl., Exs. 9 at 3 (Art. VIII, § 8.04(i)); 10 at 3 (Art. VIII, § 8.04(i)) (same).

### 3.   The Account Statements & the 2012 Renewal Notices

Chase generated account statements relating to the Beneficiary IRA CD accounts. Copies of the account statements for David Chasman's account for the period January 1, 2011 through June 30, 2012 are submitted herewith, as are copies of the statements for Haim Chasman's account for the same period.  Farmer Decl., Exs. 5-8.  Those statements reflect that David Chasman's Beneficiary IRA CD had an account number ending in 8477, and that Haim Chasman's Beneficiary IRA CD had an account number ending in 2413.  *Id*.

In separate but materially identical account notices to Plaintiffs dated January 13, 2012, Chase informed Plaintiffs that their Beneficiary IRA CDs were due to mature and automatically renew on January 30, 2012.  Farmer Decl., Exs. 3, 4.  These notices also outlined the specific terms and conditions that would apply to Plaintiffs' renewed CDs, indicating, inter alia, that when the Beneficiary IRA CDs matured, they would automatically renew for the same three-year term "at the standard (non-special) interest rate in effect on the renewal date" (rather than at the 12% APY that had, mistakenly, applied in the then-ending term); that the standard rate as of January 13, 2012 was .35% APY; and that the Beneficiary IRA CDs would automatically renew "thereafter for successive like periods of time, with an interest rate then in effect on the renewal date for like term CDs to be applicable during such time period."  *Id*. at 1-2.  Account statements for the Beneficiary IRA CDs reflect that the interest rate applicable to the rolled-over Beneficiary IRA was .35%.  Farmer Decl., Exs. 6, 8.

**ARGUMENT**

**POINT I**

**THE COURT SHOULD GRANT CHASE'S MOTION FOR JUDGMENT
ON THE ORIGINAL PLEADINGS BECAUSE THE COMPLAINT
FAILS TO STATE VIABLE CLAIMS FOR RELIEF**

The standard applicable to a motion for judgment on the pleadings pursuant to Fed. R.

Civ. P. 12(c) is the same as the standard applicable to a motion to dismiss under Fed. R. Civ. P.

12(b)(6).  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  In order for a

complaint to survive a Rule 12(c) motion, it "must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  Legal conclusions set forth in a complaint are not entitled to any assumption of truth.

*Iqbal*, 556 U.S. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (court is

not bound to accept as true "a legal conclusion couched as a factual allegation").

As is the case on a motion to dismiss pursuant to Rule 12(b)(6), a court deciding a Rule

12(c) motion "may consider the pleadings and exhibits attached thereto, statements or documents

incorporated by reference in the pleadings, matters subject to judicial notice, and documents

submitted by the moving party, so long as such documents either are in the possession of the

party opposing the motion or were relied upon by that party in its pleadings."  *Reyes v. City of

N.Y.*, No. 10-cv-1838, 2012 WL 37544, at *1 n.1 (E.D.N.Y. Jan. 9, 2012) (internal quotation

marks and citation omitted); *see also Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)

("Because this matter comes to us on appeal from a judgment on the pleadings, we rely on the

complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.").

Documents that are not expressly incorporated by reference may also be considered if the documents are nevertheless "integral" to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.'" *Id.* (internal quotation marks and citation omitted); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) (holding that contracts were properly considered on motion to dismiss where plaintiff referred to and relied on them); *Goel*, 820 F.3d at 559 (noting that contracts "containing obligations upon which the plaintiff's complaint stands or falls" are typical of the type of documents that may be considered on motions to dismiss).

Applying these standards here, the Court should grant Chase's motion for judgment on the pleadings and dismiss the Complaint with prejudice.

### A. The Complaint Fails to State a Claim for Breach of Contract Because It Does Not Identify Any Provision of Any Contract that Has Been Breached

The Complaint fails to state a breach of contract claim because it does not identify any provision of any contract that Chase supposedly breached.

Under New York law,[3] to state a breach of contract claim, a plaintiff must plead "(1) the

---

[3] Plaintiffs appear to presume that New York law governs their claims. *See, e.g.*, PAC ¶ 46 (citing case applying New York law). The Deposit Account Agreement that was in effect when Plaintiffs opened their Beneficiary IRA CDs contained a choice-of-law clause providing that the law of the account holder's state of residence shall apply (unless superseded by federal law). Deck Decl., Exs. 1 at 18; 2 at 18. Plaintiffs state in the PAC that David was a resident of New York at the time, and that Haim was a resident of New Jersey at the time. PAC ¶¶ 67, 77. The

existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach

of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d

Cir. 1996).  To plead these elements and withstand a motion for judgment on the pleadings, a

complaint "must provide specific allegations as to an agreement between the parties, the terms of

that agreement, and what provisions of the agreement were breached as a result of the acts at

issue." *Levy v. Bessemer Trust Co., N.A.*, No. Civ. 1785 (JFK), 1997 WL 431079, at * 5

(S.D.N.Y. Jul. 30, 1997); *see also Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750

(S.D.N.Y. 2017) ("The plaintiff must identify what provisions of the contract were breached as a

result of the acts at issue." (internal quotation marks and citation omitted)); *Ellington Credit*

*Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (same);

*Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (dismissing claim

because plaintiffs failed to identify contractual provisions allegedly breached).

   Here, the Complaint is devoid of any allegations regarding the specific provision of any

contract that was supposedly breached.  Plaintiffs allege that their mother's IRA CD paid 12%

interest.  But there is no factual allegation in the Complaint that Ms. Chasman's contract

provided that the same rate would apply to *her beneficiaries* upon her death.  Furthermore, as is

explained above, the new accounts opened for Plaintiffs when they established the Beneficiary

IRA CDs were governed not by their mother's contract, but by new contracts, i.e., the Deposit

Account Agreement and the IRA Custodial Agreement.  *See supra* D.2.  And with respect to

interest rates, the Deposit Account Agreement expressly provides that automatically renewing

---

Deposit Account Agreement was subsequently refined to state that the governing state law depends upon where an
account was opened, which in turn depends upon whether the account was opened in person (in which case the law
of the state where the account was opened applies) or by mail or other remote means (in which case the law of the
state where the account holder resided applies).  Deck Decl., Ex. 4 at 15.  There is no basis to conclude from
Plaintiffs' submissions in this case that, even if they had opened their accounts in person, they did so in any states
other than the states in which they resided at the time.  This brief generally discusses only New York law; but to the
extent that New Jersey law differs materially from New York law, the brief provides relevant explanations.

CDs, like Plaintiffs', shall receive the interest rate in effect at the time of renewal.  *See* Deck Decl., Exs. 1 at 11 ("[Y]our CD will automatically renew for the same time period as the initial term, and thereafter for successive like periods of time, with an interest rate then in effect on the renewal date for like term CD to be applicable during such time period."); 2 at 11 (same); 3 at 11 (same).  In sum, Plaintiffs have not identified, and cannot identify, any provisions of any contracts that were breached here.

In addition, Plaintiffs are mistaken in asserting that the contractual terms of Ms. Chasman's IRA CD transferred "as a matter of law" as with "any securities or contracts" held for beneficiaries.  PAC ¶ 38; *see also* PAC ¶ 11 (alleging that a CD "is a contract or security").  Plaintiffs provide no legal authority in support of this proposition, either in the PAC or in their brief in support of the motion to amend.  FDIC-insured bank CDs are cash instruments, *cf. Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 363 (1986), and are "not a 'security' within the meaning of the securities laws."  *Felkay v. ZB Ltd. P'ship No. 1*, No. 81 Civ. 0289 (RWS), 1983 WL 1325, at *9 (S.D.N.Y. June 16, 1983); *see also Kazanjian v. Jamaica Sav. Bank*, 105 Misc. 2d 228, 229, 432 N.Y.S.2d 62, 63 (Sup. Ct. N.Y. Cnty. 1980) ("It has been held that a certificate of deposit or a time deposit is a loan to a bank by a depositor for an agreed period of time at a stated rate of interest.").

Consistent with the fact that a CD is a cash instrument, the respective shares of the funds in Ms. Chasman's IRA CD account were distributed to Plaintiffs as cash proceeds in the new Beneficiary IRA CDs.  Indeed, the Beneficiary Form that each of the Plaintiffs executed is titled "Traditional IRA *Election of Payment* by Beneficiary," Farmer Decl., Exs. 1, 1A, 2 (emphasis added), and expressly states that it is used "to request a *withdrawal* from a Traditional IRA . . . due to the death of the participant."  *Id.* (emphasis added).  In addition, by executing the

13

Beneficiary Form, each of the Plaintiffs explicitly acknowledged that "[t]he Custodian is authorized and directed *to distribute from my share* of the deceased's IRA in the manner requested above." *Id*. (emphasis added).

While the named beneficiary of an IRA may have an interest in the proceeds of a CD in the IRA upon the owner's death, there is neither factual nor legal basis for Plaintiffs' claim that the contractual terms governing the decedent's CD are transferred to the beneficiary's share of such proceeds once those proceeds are withdrawn from the decedent's IRA and invested in a new CD in the beneficiary's IRA.

Accordingly, the breach of contract claim should be dismissed.

## B. <u>The Complaint Fails to State a Claim for Breach of Fiduciary Duty</u>

The Complaint fails to state a breach of fiduciary duty claim for two reasons. *First*, "no fiduciary duty is owed where explicit contractual disclaimers of fiduciary duty apply." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 523 (S.D.N.Y. 2014); *see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 269 (S.D.N.Y. 2012) ("Courts have repeatedly found no fiduciary duty between the parties where the Agreement contains a clear and unambiguous disclaimer of a fiduciary relationship." (internal quotation marks and citation omitted)); *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 326 (S.D.N.Y. 2011) ("Under New York law, contractual disclaimers of fiduciary duty are enforceable when sufficiently explicit."). Here, the Custodial Agreement expressly disclaimed any fiduciary relationship between the parties: "By performing services under this Agreement we are acting as your agent. You acknowledge and agree that nothing shall be construed as conferring fiduciary status upon us." Farmer Decl., Exs. 9 at 3 (Art. VIII, § 8.04(i)); 10 at 3 (Art. VIII, § 8.04(i)) (same); *see also Summit Props. Int'l, LLC v. Ladies Prof'l Golf Ass'n*, No. 07 Civ. 10407(LBS),

14

2010 WL 2382405, at *7 (S.D.N.Y. June 14, 2010) (finding "no fiduciary duty between the parties" where the agreement at issue contained "explicit language that the parties are not fiduciaries . . . . ('Nothing herein contained shall be construed to place the parties in the relationship of partners, joint ventures, principal and agent, or fiduciaries….').").

*Second*, the claim is premised on the theory that Chase, as Custodian, improperly "permit[ed] the unilateral alteration of the contracts."  Compl. ¶ 21.  For the reasons explained immediately above, however, the Complaint fails to plead a plausible claim that Chase violated any specific provision of any supposed agreement to apply a 12% rate to the Beneficiary IRA CDs.  *See supra* Point I.A.  Accordingly, the Complaint also fails to sufficiently plead the breach of fiduciary duty claim.

Consequently, the breach of fiduciary duty claim cannot stand.

## C.  Plaintiffs' Claims Are Time-Barred Under Applicable Statutes of Limitations

The Complaint is barred by the applicable statutes of limitations.  Under New York law, the statute of limitations for a breach of contract claim is six years.  N.Y. C.P.L.R. § 213(2).  The limitations period for a cause of action for breach of fiduciary duty under New York law "depends upon the substantive remedy sought.  Where the relief sought is equitable in nature, the six-year limitations period of CPLR 213(1) applies, but if the claim is for monetary relief, a three-year limitation applies."  *Amberger v. Legacy Capital Corp.*, No. 17 Civ. 532 (NRB), 2017 WL 4863093, at *8 (S.D.N.Y. Oct. 16, 2017) (internal quotation marks and citation omitted); *cf. Estate of Warner v. Koo*, No. A-1367-16T3, 2018 WL 5289050, at *4 (N.J. Super. Ct. App. Div. Oct. 25, 2018) ("The statute of limitations for a breach of fiduciary duty which results in purely economic loss is controlled by the substantive law governing the relationship and is typically six years.").  As set forth in the Complaint, Plaintiffs seek money damages for past non-payment of

15

what they contend was the applicable 12% interest rate, and specific performance in the form of the payment of 12% interest going forward.  Compl. ¶¶ 26-27.  Accordingly, they seek monetary relief and their breach of fiduciary duty claim is subject to the three-year statute of limitations.

The Complaint alleges that Chase's supposed breaches occurred in early 2012. Specifically, Plaintiffs contend that when the Beneficiary IRA CDs automatically renewed on January 30, 2012, Chase's failure to apply a 12% interest rate constituted both a contractual breach and a breach of Chase's supposed fiduciary duty.  Compl. ¶¶ 16-17 (identifying breach of contract as refusal to renew CDs at 12% interest rate in 2012); ¶¶ 21-27 (asserting that changing the interest rate constituted a breach of fiduciary duty); *see also* Farmer Decl., Exs. 6, 8 (account statements showing that interest rate for the rolled-over Beneficiary IRA CDs was .35%).[4] Based upon the allegations of the Complaint itself, Plaintiffs' causes of action accrued on January 30, 2012.  *Cf. T & N PLC v. Fred S. James & Co.*, 29 F.3d 57, 59 (2d Cir. 1994) ("Under New York law, a cause of action for breach of contract accrues and the statute of limitations commences when the contract is breached."); *Murphy v. Morlitz*, 751 F. App'x 28, 30 (2d Cir. 2018) ("A claim for breach of fiduciary duty accrues as soon as the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." (internal quotation marks and citation omitted)).[5]

---

[4] The Court may, on a motion for judgment on the pleadings, consider the account statements that reflect the interest rate and thus form the basis of Plaintiffs' claims.  *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (considering, on motion to dismiss, credit card "account history and monthly statements because they are integral to [plaintiff's] claims and [he] had notice of that information").

[5] The January 30, 2012 accrual date applies to Plaintiffs' contractual claim notwithstanding New York Uniform Commercial Code ("U.C.C.") § 3-122(2).  That statute provides that "[a] cause of action against the obligor of a demand or time certificate of deposit accrues upon demand, but demand on a time certificate may not be made until on or after the date of maturity."  U.C.C. § 3-122(2); *cf.* N.J. Stat. Ann. § 12A:3-118(d) (action enforcing "obligation of a party to a certificate of deposit to pay the instrument must be commenced within six years after demand for payment is made to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed").  But this U.C.C. provision does not alter the accrual date here, for the following reason.

As a result, Plaintiffs were required to sue for breach of contract on or before January 30, 2018, and for breach of fiduciary duty on or before January 30, 2015. Plaintiffs, however, did not commence this action until March 12, 2018, and their claims are consequently time-barred.

### D. **Plaintiffs' Claims Are Time-Barred by the Contractual Limitations Period**

The Complaint is also time-barred by the two-year contractual limitations period governing Plaintiffs' Beneficiary IRA CDs (the "contractual limitations period").

Under New York law, it is well-settled that "an agreement which modifies the Statute of Limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable . . . provided it is in writing." *John J. Kassner & Co. v. City of N.Y.*, 46 N.Y.2d 544, 551, 415, N.Y.S. 785, 789 (1979); *see also* N.Y. C.P.L.R. § 201 (action must be "commenced within the time specified in [Article 2 of the Civil Practice Law and Rules] unless a . . . shorter time is prescribed by written agreement"). Agreements, including bank account agreements, that shorten statutes of limitations to even one year have been found enforceable. *See, e.g.*, *Wechsler v. HSBC Bank USA, N.A.*, 674 F. App'x 73, 75 (2d Cir. 2017) (concluding that one-year contractual limitations period in bank account agreement was reasonable); *Cohen v. Mfrs. Trust Co.*, 144 N.Y.S.2d 366, 370 (Sup. Ct. N.Y. Cnty. 1955) (bank customer's action barred by failure to commence suit within one-year contractual limitations period in deposit account agreement); *see also Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 372-73 (S.D.N.Y. 2010) (plaintiff's claims based on deposit account were governed by shortened statute of limitations in account agreement).

---

Here, Plaintiffs were informed in mid-January 2012 that Chase would not apply the 12% rate upon *renewal* of the Beneficiary IRA CDs on January 30, 2012. They nevertheless allowed their Beneficiary IRA CDs to roll over for a new term. Thus any cause of action they had is based on the failure to *renew* at the 12% rate on January 30, 2012, not based on any event that happened *after* they allowed their CDs to roll over for new terms.

Thus, Plaintiffs' claims accrued no later than January 30, 2012, the first maturity date after they were notified that Chase would not give them the 12% rate to which they claim they were contractually entitled.

17

Here, the Deposit Account Agreement, by which Plaintiffs are bound, specifically provides that "any lawsuit" must be commenced "within 2 years after the cause of action arises." Deck Decl., Ex. 4 at 16 ("You must file any lawsuit or arbitration against us within 2 years after the cause of action arises, unless state law or an applicable agreement provides for a shorter time").[6]  As was previously explained, *see supra* D.2, that limitations period came into force with respect to Plaintiffs' Beneficiary IRA CDs starting on January 30, 2015.  *See* Deck Decl., Ex. 4 at 15 (stating that changes to the Deposit Account Agreement will become effective as to automatically renewable CDs on the next renewal date); *cf. McGuirk v. City Sch. Dist. of Albany*, 116 A.D2d 363, 365, 501 N.Y.S.2d 477, 478 (3d Dep't 1986) (retroactive application of a limitations period is permitted provided that there is a reasonable time to commence the action once the shortened limitations period has been applied).

Plaintiffs' lawsuit, which was commenced more than two years after January 30, 2015, is therefore fully time-barred by the contractual limitations provision.

## POINT II

### THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT BECAUSE THE PROPOSED AMENDMENTS ARE ENTIRELY FUTILE

Although Fed. R. Civ. P. 15 provides that leave to amend should be freely granted where justice so requires, leave should be denied if the proposed amendments are without merit or futile.  *See, e.g.*, *Cohen v. Singer*, 4 F. App'x 38, 40 (2d Cir. 2001); *Health-Chem. Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990); *Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, No. 10 Civ. 5999(GBD), 2013 WL 123727, at *1 (S.D.N.Y. Jan. 8, 2013) ("[A] court should not grant a plaintiff a right to amend when such amendment would be futile.").  "In this Circuit, an

---

[6] The two-year limitations period likewise was contained in subsequent iterations of the DAA.  *See, e.g.*, Exs. 5 at 16; 6 at 16.

amendment is considered futile if the amended pleading fails to state a claim, or would be

subject to a motion to dismiss on some other basis."  *Horvath v. Daniel*, 423 F. Supp. 2d 421,

423 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  For the reasons explained

below, Plaintiffs' proposed amendments are futile and the motion to amend should be denied.

### A.  The Proposed Amendments Relating to the Untimeliness of Plaintiffs' Claims Are Futile Because the "Continuing Wrong" Doctrine Does Not Apply

Attempting to avoid the untimeliness of their breach of contract and breach of fiduciary

duty claims, Plaintiffs invoke the continuing wrong doctrine and maintain that Chase committed

new breaches in 2015 and 2018 by declining to "renew the contract terms" that supposedly

required the "evergreen" 12% interest rate.  PAC ¶¶ 21, 30.  In other words, Plaintiffs absurdly

argue that any statutory and contractual limitations periods must re-commence each and every

time, potentially ad infinitum, that the Beneficiary IRA CDs roll over and Chase does not apply a

12% rate.  Plaintiffs' proposed amendments fail to save their time-barred claims:  Their reliance

on the continuing wrong doctrine to toll the limitations period is misplaced and would not cure

the timeliness deficiencies inherent to the claims.

For breach of contract actions, the "continuing wrong" doctrine provides a "narrow"

exception to the statute of limitations.  *Mindspirit, LLC v. Evalueserve Ltd*., 346 F. Supp. 3d 552,

593 (S.D.N.Y. 2018) (citing *Henry v. Bank of Am*., 147 A.D.3d 599, 601, 48 N.Y.S.3d 67, 69-70

(1st Dep't 2017)).  It extends the statute of limitations for a "series of independent, distinct

wrongs" that includes a breach that occurred within the limitations period.  *Mindspirit*, 346 F.

Supp. 3d at 593.  It does not, however, apply when the plaintiff alleges "a single wrong that has

continuing effects" and the original breach occurred outside of the limitations period.  *Id.*

Courts distinguish between timely "independent wrongs" and the timely continuing

effects of an untimely "single wrong" by examining whether the timely events that the plaintiff

describes "relate back to the original alleged breach." *Mindspirit*, 346 F. Supp. 3d at 593 (citing *First Am. Title Ins. Co. of N.Y. v. Fiserv Fulfillment Servs., Inc*., No. 06 Civ. 7132(NRB), 2008 WL 3833831, at *3 (S.D.N.Y. Aug. 14, 2008) (Buchwald, J.)).

For example, in *Henry*, the plaintiff alleged that the defendant bank improperly enrolled him in various programs.  147 A.D.3d at 600-01, 48 N.Y.S.3d at 69.  Although the plaintiff initiated his action after the limitations period for the improper enrollment had expired, he alleged that each time the bank had charged him fees for the programs, those fees constituted a continuing wrong that extended the limitations period.  The Appellate Division affirmed the holding that the fees "represent the consequences of the original wrongful acts in the form of continuing damages, not the wrongs themselves, and do not quality for application of the continuous wrong doctrine."  147 A.D.3d at 602, 48 N.Y.S.3d at 69-70.

Similarly, in *Roslyn Savings Bank v. National Westminster Bank USA*, 266 A.D.2d 272, 273, 699 N.Y.S.2d 421, 422 (2d Dep't 1999), the plaintiff alleged that defendant bank had erroneously reported its checks as having been unpaid.  After the statute of limitations had expired for the initial false reporting, plaintiff commenced suit, alleging that each bank statement it received that repeated the erroneous report was a "separate breach that started the claim to accrue anew."  *Id*.  Although the trial court agreed, the Appellate Division reversed because the bank statements represented only the consequences of the bank's untimely breach.  *Id*.

Just like in *Henry* and *Roslyn Savings*, the continuing wrong doctrine is inapplicable here because Plaintiffs allege a single wrong with continuing effects.  Plaintiffs contend that in 2012 Chase refused to honor a supposed contractual commitment to apply an "evergreen" 12% rate. The terms and conditions that Chase made clear to Plaintiffs in January 2012 would apply to the Beneficiary IRA CDs specifically and expressly state that the Beneficiary IRA CDs would, upon

any future automatic renewal, receive the then-standard interest rate applicable to CDs with similar terms (i.e., not an eternal 12% rate).  Hence, the non-application of the 12% interest rate upon the automatic renewals in 2015 and 2018 was not part of a series of independent, distinct, and new contractual breaches (or breaches of fiduciary duty supposedly predicated on contractual breaches), but rather the continuing effects of Chase's single, earlier refusal in 2012 to recognize supposedly applicable contractual terms that allegedly would have required application of an "evergreen" 12% interest rate on each successive renewal.  In other words, the PAC "relates back" to an untimely alleged breach, so the continuous wrong doctrine is inapposite here.

Accordingly, Plaintiffs' futile request to replead with respect to limitations periods should be denied.

## B. The Proposed Amendments Relating to Plaintiffs' Breach of Contract Claim Are Futile Because Plaintiffs Still Fail to Identify Any Contractual Provision that Chase Supposedly Breached

The PAC is also futile to the extent that it purports to identify contractual provisions that Chase allegedly breached.

It is blackletter New York law that, in order to "create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  *Total Telcom Grp. Corp. v. Kendal on Hudson*, 157 A.D.3d 746, 747, 68 N.Y.S.3d 491, 492 (2d Dep't 2018) (internal quotation marks and citation omitted); *see also, e.g.*, *Grgurev v. Licul*, No. 1:15-CV-9805-GHW, 2016 WL 6652741, at *7 (S.D.N.Y. Nov. 10, 2016) ("[T]he Court is guided by the traditional principle that a contract is not binding unless its terms are sufficiently certain and definite.  *See, e.g.*, *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 939 (2d Cir. 1998) (quoting

Williston on Contracts § 4:18, at 414 (4th ed. 1990)) ('It is a necessary requirement that an agreement, in order to be binding, must be sufficiently definite to enable the courts to give it an exact meaning.').").  The same rule applies to modifications of contracts:  "Contract modification requires proof of each element requisite to the formation of a contract, including a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  *Kaplan v. Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Belsito Commc'ns, Inc. v. Dell, Inc.*, No. 12-CV-6255 (CS), 2013 WL 4860585, at *4 (S.D.N.Y. Sept. 12, 2013) (same).

Plaintiffs point first to the January 1991 letter from First Chicago to their mother, in which an account representative from that bank refers to Ms. Chasman's belief that a 12% interest rate offer applied to each three-year renewal of "the CD" and assures her that he will personally "see that *your* three year CD receives a minimum rate of 12% for all future renewals of the three year term."  PAC ¶10 (emphasis added).  According to the PAC, "[t]his assurance is not limited to the life of Ms. Chasman."  *Id.* ¶ 11.  But the letter is plainly limited on its face to the IRA CD, i.e., exclusively to Ms. Chasman's CD.  It says nothing whatsoever about any of Ms. Chasman's beneficiaries or about any interest rates that might apply to any separate CDs that such beneficiaries might establish after having withdrawn proceeds from her CD after her death.

Plaintiffs also rely on the so-called Addendum that each of them attached to their Beneficiary Forms, claiming that it modified the contractual terms that would have otherwise applied the Beneficiary IRA CDs.  PAC ¶¶ 16-17.  But the Addendum—stating that "[t]hese contract [sic] bear a coupon or [sic] 12% or so, which we expect to be transferred to us (50% to each of us)"—is insufficiently definite to constitute a valid, binding modification of the specific and express terms of the Deposit Account Agreement that Plaintiffs agreed to by executing the

Beneficiary Form.  The Addendum refers to what Plaintiffs "expect," not to what the parties actually agreed upon.  Nor did Plaintiffs attach to the Beneficiary Forms the contractual terms of Ms. Chasman's IRA CD, or state that the contractual terms applicable to her IRA CD required her interest rate to apply after her death, when her beneficiaries withdrew the money and used it to open new Beneficiary IRA CDs for themselves.  Moreover, the Addendum fails to set forth a sufficiently specific and certain rate of interest that Plaintiffs now contend was transferred to them; instead, it vaguely and indefinitely refers to a coupon "or [sic] 12% or so."  In terms of contractual enforceability, then, the Addendum is effectively a meaningless nullity.

As such, leave to amend the breach of contract claim should be denied as futile.

### C.  The Proposed Amendments Relating to Plaintiffs' Breach of Fiduciary Duty Claim Are Futile Because They Fail to Invalidate or Vitiate the Contractual Disclaimer of Fiduciary Duty and Do Not Plead Facts Showing a Breach of Any Alleged Duty

Plaintiffs propose amending the Complaint to add arguments that "fiduciary duties are un-waivable by contract" and that the Custodial Agreement was a contract of adhesion.  PAC ¶¶ 51-53.  Amendment would be futile because these arguments are unavailing.

As was already shown, *see supra* Point I.B, it is well-settled New York law that clear contractual disclaimers of fiduciary duty are effective.  Against that overwhelming weight of authority, Plaintiffs cite a law review article stating that some courts have upheld fiduciary duties even where the parties attempted to expressly disclaim them.  PAC ¶ 53 & n.1.  The law review article, however, cites no New York case in support of that specific position.  Although the article refers to *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005), it does so for the proposition that a fiduciary duty not created by a contract itself may nonetheless arise out of the parties' relationship.  *See* PAC ¶ 53 & n.1.  But for pleading purposes, that requires a plaintiff to make non-conclusory "allegations that, apart from the terms of the contract,

23

the [parties] created a relationship of higher trust than would arise from the [contract] alone." *Id.* at 20, 799 N.Y.S.2d at 175. No allegations of any such special relationship of trust or confidence are set forth in the PAC.

Equally unpersuasive and legally unsupported is Plaintiffs' argument that the disclaimer of fiduciary duty is unenforceable because the Custodial Agreement is a contract of adhesion. That the Custodial Agreement may have been a standardized contract that was not negotiated between the parties does not render it a contract of adhesion. *See, e.g.*, *G&R Moojestic Treats, Inc. v. MaggieMoo's Int'l, LLC*, No. 03 Civ.10027(RWS), 2004 WL 1110423, at *4 (S.D.N.Y. 2004) ("The fact that the [agreement] was presented on a take it or leave it basis and was not subject to negotiation renders it neither a contract of adhesion nor unconscionable."); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) ("An agreement cannot be considered procedurally unconscionable, or a contract of adhesion, simply because it is a form contract." (internal quotation marks and citation omitted)).

Moreover, unequal bargaining power alone does not render a contract unenforceable without additional proof of unfairness, undue oppression, or unconscionability. *See Klos v. Polskie Linie Lotnicze*, 133 F.3d 164 (2d Cir. 1997) ("A court will find adhesion only when the party seeking to rescind the contract established that the other party used 'high pressure tactics,' or 'deceptive language,' or that the contract is unconscionable."); *Maxine Co. v. Brinks Glob. Servs. U.S.A., Inc.*, No. 602233/05, 2010 WL 1856019, at *3 (Sup. Ct. N.Y. Cnty. Apr. 21, 2010) (adhesion "may not be invoked to trump the clear language of the agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability" (internal quotation marks and citation omitted)), *aff'd sub nom. Maxine Co. v. Brinks's Glob. Servs. USA, Inc.*, 94 A.D.3d 53, 937 N.Y.S.2d 199 (1st Dep't 2012). Plaintiffs' allegation, PAC ¶ 52, that they lacked

24

the resources to negotiate a contract is insufficient to render the Custodial Agreement void. Plaintiffs nowhere allege or suggest that they were unfairly, unconscionably, or improperly induced by Chase to enter into the Custodial Agreement or that the provision at issue is substantively oppressive, coercive, or unconscionable.  *See, e.g.*, *Jacobs v. Citibank, N.A.*, 61 N.Y.2d 869, 872, 474 N.Y.S.2d 464, 466 (1984) (holding claims of unconscionability "meritless" because plaintiffs could not show they were "deprived of a meaningful choice of banks with which they could do business and that the terms of these agreements with defendant were unreasonably favorable to the bank").  Certainly they were free to take their inherited money out of Chase and deposit or invest it elsewhere.

Additionally, Plaintiffs' proposed amendments do not cure their failure to identify any supposed breach of any purported fiduciary duty.

In sum, because the proposed amendments with respect to the breach of fiduciary duty claim would be futile, leave to amend should be denied.

**D. The Proposed Amended Complaint's New Causes of Action—for Consumer Fraud and Deceptive Trade Practices—Are Legally Insufficient, and Leave to Replead Would Accordingly Be Futile**

The PAC seeks to assert three new claims, for alleged consumer fraud and/or deceptive trade practices, under Illinois, New Jersey, and New York statutes (the "consumer fraud/deceptive practices claims").  PAC ¶¶ 56-81.  The newly proposed claims are, however, time-barred and (as to two of them) patently unsustainable as a matter of law.  Leave to amend to add those claims should consequently be denied as futile.

**1. The Proposed New Claims Are Time-Barred**

All of the proposed consumer fraud/deceptive trade practices claims are untimely under applicable statutes of limitations.

25

The Illinois "Consumer Fraud Act . . . has a three year statute of limitations," *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 893 (N.D. Ill. 2000) (citing 815 Ill. Comp. Stat. Ann. § 505/10a(e)), and claims thereunder accrue "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Rush Univ. Med. Ctr. v. Minn. Mining & Mfg. Co.*, No. 04 C 6878, 2007 WL 4198233, at *2 (N.D. Ill. Nov. 21, 2007) (internal quotation marks and citation omitted).

"A claim under the [New Jersey] Consumer Fraud Act is governed by a six year statute of limitations.  N.J.S.A. 2A:14–1 . . . .  A cause of action for fraud accrues when a plaintiff knows or should know of its existence." *NN&R, Inc. v. One Beacon Ins. Grp.*, 362 F. Supp. 2d 514, 521 (D.N.J. 2005) (internal quotation marks and citation omitted).

New York courts have uniformly applied a three-year statute of limitations to cases under New York General Business Law § 349.  *See, e.g.*, *Schandler v. N.Y. Life Ins. Co.*, No. 09 Civ. 10463 (LMM), 2011 WL 1642574, at *4 (S.D.N.Y. Apr. 26, 2011).  "Accrual of a private right of action under section 349 occurs when plaintiff has been injured by a deceptive act or practice violating section 349." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiffs' proposed consumer fraud/deceptive trade practices claims accrued by no later than January 30, 2012, when Chase declined to apply the supposedly applicable "evergreen" 12% interest rate.  Having waited until March 2018 to commence this action, Plaintiffs' newly proposed claims are all time-barred.  Nor would the continuing wrong doctrine salvage the newly proposed claims, since Plaintiffs do not and, under the facts and circumstances of this case, could not allege a series of deceptions by Chase.

2. **The Proposed Pleading Fails to State a Claim for Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. § 505/1 *et seq.***

The newly proposed claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA") is futile for the independent reason that Plaintiffs lack standing to sue thereunder.

As a general rule, "the statute may only be invoked by Illinois residents." *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 768 (S.D. Ill. 2010). Plaintiffs do not allege that they are Illinois residents; they resided in New York and New Jersey at the time that the supposedly deceptive act took place, PAC, ¶¶ 67, 77; and they stated in 2017 in their earlier amended complaint in a separate action before this Court that they were residents of New Jersey at the time of the filing of that earlier amended complaint. Weiss Decl., Ex. 3 at ¶ 3. "[N]onresident plaintiffs may sue under the ICFA only if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois." *Crichton v. Golden Rule Ins. Co*., 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (Ill. 2005). Here, Plaintiffs identify an "alleged modification of the Certificate of Deposit on transfer from the decedent to the beneficiaries" as the "deceptive practice" that allegedly violated the ICFA, PAC ¶ 59, but they fail to allege, much less in non-conclusory fashion, that most or even any of that supposedly fraudulent transaction took place in Illinois. As a result, their proposed claim under the ICFA could not succeed. *See, e.g.*, *See Crichton*, 576 F.3d at 396; *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 676-77 (E.D.N.Y. 2017) (dismissing New York resident's ICFA claim because he pled only an "attenuated connection" between "the relevant transaction and the State of Illinois").

**3.   The Proposed Pleading Fails to State a Claim for Deceptive Trade
Practices in Violation of N.Y. Gen. Bus. Law § 349**

Plaintiffs' proposed additional cause of action under New York's deceptive trade practice statute, General Business Law § 349, is futile because they fail to allege any facts showing that Chase engaged in a consumer-oriented deceptive practice.

In order to state a § 349 claim, a plaintiff must allege:  (1) "that the challenged act or practice was consumer-oriented"; (2) that such act or practice is deceptive or misleading "in a material way"; and (3) "that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895 (2002).

To adequately plead that the act or practice complained of was "consumer-oriented," a § 349 plaintiff must allege facts showing more than a private dispute between two parties; rather, the complaint must allege facts sufficient to show that "the acts or practices [by which he was harmed] have a broader impact on consumers at large."  *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 302 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290 (1995) (plaintiff is required to show that the practices complained of "have a broad impact on consumers at large; [p]rivate contract disputes unique to the parties . . . would not fall within the ambit of the statute" (alteration in original) (internal quotation marks and citation omitted)); *Seller v. Citimortgage, Inc.*, 118 A.D.3d 511, 511, 988 N.Y.S.2d 32, 34 (1st Dep't 2014) (defendant did not engage in consumer-oriented conduct by telling plaintiffs how to satisfy mortgage delinquency requirement for purpose of qualifying for defendant's loan modification program; the conduct was "specific to them" and had "no broader impact on consumers at large" (internal quotation marks and citation omitted)).

Here, the PAC's factual allegations are entirely specific to Plaintiffs:  The PAC alleges

that *their* alleged contractual modification, through the Addendum, was in turn modified by

Chase with respect to *their* Beneficiary IRA CDs, and that this change was misleading,

deceptive, and injurious as to *them*.  PAC ¶¶ 79-80.  Where, as here, the factual allegations are

entirely "specific to" the plaintiffs, plaintiffs have no claim for violation of § 349.  *Seller*, 118

A.D.3d at 511, 988 N.Y.S.2d at 34 (affirming dismissal of complaint where allegations were

specific to plaintiff and had "no broader impact on consumers at large").

*   *   *

In sum, amending the Complaint to add the proposed consumer fraud/deceptive practices

claims would be wholly futile.

## CONCLUSION

For all the foregoing reasons, the Court should grant Chase's motion for judgment on the

pleadings and deny Plaintiffs' motion for leave to amend.[7]

---

[7] During the May 23, 2019 conference call regarding the instant motions, Chase requested additional pages for this memorandum of law and the Court indicated that Chase could file a brief of up to 30 pages.

Dated:  August 2, 2019
       New York, New York

Respectfully submitted,

BECKER, GLYNN, MUFFLY, CHASSIN &
HOSINSKI LLP

*/s/ Andrea Likwornik Weiss*
By: _____
     Andrea Likwornik Weiss
     Gregory P. Feit
299 Park Avenue
New York, New York 10171
Tel: (212) 888-3033
aweiss@beckerglynn.com
gfeit@beckerglynn.com

*Attorneys for Defendant*
*JPMorgan Chase Bank, N.A.*