UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| David Chasman, Haim Seth Chasman;<br>    Plaintiffs<br><br>v.<br><br>JPMorgan Chase Bank, NA<br>Chase Bank, and related subsidiaries,<br>Successor by merger of First National<br>Bank of Chicago<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE 1:18-CV-06681 – NRB |
|---|---|---|

**PLAINTIFF'S**
**MEMORANDUM OF LAW**
**IN REPLY IN FAVOR OF MOTION TO AMEND AND AGAINST DEFENDANT'S**
**MOTION FOR JUDGEMENT ON THE PLEADINGS**

**STROPHEUS LAW LLC**
**800 THIRD AVENUE, 28TH FL**
**NEW YORK NY 10022**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**

**FACTUAL BACKGROUND**

**ARGUMENT – STANDARD OF REVIEW**

**POINT I - THE COURT SHOULD DENY CHASE'S MOTION FOR JUDGEMENT ON THE PLEADINGS (AS AMENDED) BECAUSE THE COMPLAINT CLEARLY STATES VIABLE CLAIMS FOR RELIEF**

    **A. Defendants Wrongly Claim that Plaintiffs Fail to Identify the Provisions of the Contract that Have Been Breached -   The Amended Complaint Clearly Identifies the Specific Contract Terms that have been Breached**

    **1. First Contractual Claim Based on Decedent's Contract and Rights of Successors Under General Terms**

    **2. The Second Contractual Claim is the 2009 Inherited IRA Contract Including the 1991 Evergreen Term by Reference**

    **3. The Defendants Argue Wrongly that the Certificates of Deposit Are Not Contractual in Nature**

    **4. If A Contract Is Unclear from The Face Of The Agreement The Contract Terms Are Question Of Fact And Unsuitable For Summary Judgement**

    **5. If Not Clearly in Favor of the Plaintiffs, The Contract Terms are Ambiguous and for that Reason, Not Determined on Motion on Pleadings**

        **a. Two or more of these documents can and should be read together to include the contract terms**

        **b. Course of Conduct Also Shows Consent to Evergreen Contract Terms Even in Inherited Accounts -  Especially Conduct after Execution of an Agreement**

    **B. The Amended Complaint Clearly States a Claim for Breach of Fiduciary Duty -  Defendants Wrongly Claim that Contract Terms Bar Such Duty.**

    **1. The Amended Complaint Alleges a Trust (and fiduciary)  Relationship Based on the Internal Revenue Code Definition of an IRA Account  –  And Supported by Case Law**

    **2. The Question of Whether There is Fiduciary Duty is a Question of Fact – Not the Basis for a Motion on Pleadings**

**POINT II  The Court Should GRANT the Plaintiff's Motion to Amend Because the Defendant's Argument of Futility are Misplaced and Dependent on False and Misleading Statements – and the Amendment is Not Futile**

**A.  Continuing Wrong Doctrine Is Wrongly Applied by the Defendants**

**B Defendant's Statement Regarding Identification of Contract Provision is Factually Wrong  - Specific Contract Provisions are Described – see above**.

**C Amendment of Breach of Fiduciary Duty Claim are Sufficient to Show a Breach of the Duty Described – the Duty to Preserve the Contract / Security Rights of Asset in the Account – see above.**

**D – The Plaintiffs Abandon the Proposed New Causes of Action as Time Barred**

# TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

*Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 274 (S.D.N.Y.2006)   P17

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 725 (2d Cir. 2010) p7

*Ashcroft v. Iqbal*   556 US 662, 678 (2009).    P7

*Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC, 2009 WL 1803458 (S.D. N.Y. 2009), judgment aff'd, 402 Fed. Appx. 623 (2d Cir. 2010). P13*

B*arrett v. Grenda, 154 A.D.3d 1275, 1278, 62 N.Y.S.3d 673 (N.Y. 2017) p16*

*Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.,* 283 A.D.2d 448, 729 N.Y.S.2d 142 (2nd Dept.2001);  P17

 *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig., No. 07 Civ. 10453 (RWS), 2011 WL 4357166, at \*2-3 (S.D.N.Y. Sept. 13, 2011)   p8*

*Burry v. Madison Park Owner LLC, 84 A.D.3d 699, 700, 924 N.Y.S.2d 77 (N.Y. 2011).  P16*

*Celle v. Barclays Bank P.L.C., 48 A.D.3d 301, 302, 851 N.Y.S.2d 500 (N.Y. 2008)*. P16

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.,* 76 A.D.3d 310, 901 N.Y.S.2d 618, 636 (1st Dept.2010)  P17

*Cleveland v. Caplaw Enters,* 448 F. 3d 518 520( 2d Cir. 2006).     P7
*Davis v. Dime Savings Bank of New York,* 158 A.D.2d 50, 557 N.Y.S.2d 775 (3rd Dept.1990)). P17

 *EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 19, 832 N.E.2d 26, 799 N.Y.S.2d 170 (2005)*, P16

*FG v. MacDonell, 696 A.2d 697 (N.J. 1997).*

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 756 F.2d 230 (2nd Cir. 1985).   P11*

*Granirer v. Bakery, Inc.,* 54 A.D.3d 269, 863 N.Y.S.2d 396, 399 (1st Dept.2008) P17

*Grund v. Delaware Charter Guarantee & Trust Co., 788 F. Supp. 2d 226 (S.D.N.Y. 2011)  P17*

*Intercargo Ins. Co. v. M/V "Neptune Jade", 1996 WL 325616, *2 (S.D. N.Y. 1996)  P13*

*Jack v. Concordia Homes of Cal., LLC,* No. D049863, 2008 WL 802605, at *6 (Cal.Ct.App. Mar. 27, 2008) P17

*Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F3d 63 (CA2 2011).   P12*

*Mandelbaum,* 09 Civ. 752, 787 F.Supp.2d at 1253, 2011 WL 1225549      P 17

*Mandelblatt v. Devon Stores,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dept.1987)   P17

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank,* 261 F.R.D. 13, 26 (S.D.N.Y.2009)

*NRT New York, LLC v. Morin, 147 A.D.3d 589, 589, 48 N.Y.S.3d 56 (N.Y. 2017).*  P16

*People v. Coventry First LLC, 13 N.Y.3d 108, 115, 915 N.E.2d 616, 886 N.Y.S.2d 671 (2009)* P16

*Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005)   p11

*Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990);  p8*

*Shemian v. Research In Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014)  p8*

*Shurka v. Shurka, 100 A.D.3d 566, 566, 955 N.Y.S.2d 12 (N.Y. 2012)*  P16

*Spinelli v. National Football League. 903 F.3d 185 (2nd Cir. 2018).  P12*

*Telemaque v. MARRIOTT INTERNATIONAL, INC., Dist. Court, SD NY 2016 p8*

*Tractebel Energy Marketing Inc. v. AEP Power Marketing Inc. 487 F 3d 2nd Cir. 2007). P13*

*Ward v. National Geographic Society, 284 Fed. Appx. 822 (2d Cir. 2008)  P13*

 *William Kaufman Org. v. Graham & James,* 269 A.D.2d 171, 703 N.Y.S.2d 439, 442 (1st Dept.2000) P17

*Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)  p8*

*UBS Financial Services, Inc. v. Alberti, 94 Mass. App. Ct. 180 2018.    P14, 16*

*STATUITES AND TREATISES*

*10 Am. Jur. 2d Banks and Financial Institutions § 646.  P10*

*28 N.Y. Prac., Contract Law § 8:28.    P12*

*26 U.S.C. § 408(a)* (2012).

*N.Y. Estates, Powers and Trusts Law § 1-2.7 P16*

**END OF TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**

Plaintiffs Haim and David Chasman, (Chasmans or Plaintiffs) submit this memorandum of law (i) in support of their motion to amend their pleadings to respond to the defendant's motion to dismiss or judgement on the pleadings, and (ii) in opposition to the defendants' motion to dismiss.

The brief drafted by defendants' counsel is an excellent presentation of the best legal arguments that can presented, but also an excellent example of the dodging and avoidance of facts and legal arguments that they did not want to, or could not fully, address.

Defendant's pick and choose the facts they argue –  building up straw men in order to know them down.  For example, Defendants' counsel argue that the contract claim fails to identify a specific breached contractual term, but point to only a single document, as if that were the only document or fact used by Plaintiffs to support the argument of breach of contract. Defendants ignore the other key document submitted with the amended complaint, (the 1990s letter clearly stating the key term), and role that 30 years of contract performance by the parties can play in determining or understanding the contract's meaning.  Defendants also ignore the fact that effectively two contracts are in question, the pre-death contract of the late Ms. Chasman with the Evergreen interest rate provision, and the transfer and confirmation of that term in the inherited IRA contracts executed by the Plaintiffs.  Defendants only consider one page of the new contracts by the Plaintiffs and ignore the full documentation of both contracts.

Defendants also look only to this single page to claim that the contract is not binding on successor and assigns of both parties, while they otherwise rely on the many iterations of the underlying terms and conditions for terms that Defendants portray in their own favor.  At the same time, Defendants ignore the fact that the many iterations of the deposit terms include this standard 'successor and assigns' term.   Defendants also misconstrue a Certificate of Deposit as solely a deposit account, and not a contract governed by its terms.

Defendants also argue at length regarding the statute of limitations, as if a breach of a contract somehow modifies the contract and converts all of the following breaches into contract compliance.   If breaching a contract would somehow automatically modify the contract to make the same action no longer a breach, long-term contracts would become meaningless.  This fundamental disagreement on the enforcement of the underlying contract explains much of the differing position of the Plaintiffs and Defendants on the statute of limitations.

Defendants argue that the statute of limitations makes amendment of the complaint futile on the theory that there was only one breach of contract, and that breach magically modified the contract to prevent future breaches.  (If the facts must be viewed most favorably to the Plaintiffs as non-moving parties, the existence of a continuing contract with multiple breaches must be accepted as facts proffered by the Plaintiffs both in the Amended Complaint and in briefs.)

Finally, the arguments of defendant of Defendants are made based on applying legal theory, when the issues that are raised by Defendants are actually questions of fact that must be determined after discovery and trial, not on a motion the pleadings. Case law indicates that the actual terms of the underlying contracts described above and the nature of the fiduciary duty of the Defendants to the Plaintiffs fall under this category.  To the extent that these key factors are the basis for the motion on the pleadings, the motion must be denied.

While arguing that the amendment to the complaint is futile, Defendants fail to fully address the arguments made in the amended complaint, instead, insisting that the original complaint is the sole document they need to consider

Defendants wrongly argue that Plaintiffs rely on the Continuing Wrong doctrine to resolve the statute of limitations issue with the surviving claims, while the 2015 and 2018 breaches are within the statute of limitations, and the Continuing Wrong Doctrine is only used to include the 2012-2015/2018 breach and damages in the claims.

Finally, Plaintiffs abandon the claims Illinois, New Jersey, and New York claims for deception trade practices and breach of the General Obligation Law.  We believe these claims are beyond

the statute of limitations of each. [1]

## FACTUAL BACKGROUND

In addition to the facts well described by Defendants on Brief, Plaintiffs add:

1.  That Defendants have performed under the Ms. Chasman's deposit contract for over 30 years providing the Evergreen interest rate consistent with the 1991 letter as an integral contract term that is superior to any amendment to the underlying general terms of the contract.

2.  The Defendants renewed the substantially similar contract of the late Mr. Richard Chasman with the Evergreen provision for the Plaintiffs without the execution of any additional documents by Plaintiffs as indicated on Exhibits X and Y, enclosed.

## ARGUMENT – STANDARD OF REVIEW

"The standard for addressing a Rule 12(c ) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters,* 448 F. 3d 518 520( 2d Cir. 2006). The Court "must assume the facts alleged in the complaint to be true and must liberally construe them in the light most favorable to the plaintiff."

The allegations in the complaint must meet a standard of "plausibility," and a claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that [plaintiff is entitled to relief]." *Ashcroft v. Iqbal*   556 US 662, 678 (2009). "On a 12(c ) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."

"The Second Circuit has stated that a court should allow leave to amend a pleading unless

---

[1] Claims for breach of the duty of fair dealing and related claims would still be timely and may be added to complaint in due course.

the non-moving party can establish "prejudice or bad faith." *AEP Energy Servs. Gas Holding Co.*
*v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010)*(*quoting Block v. First Blood Assocs., 988*
*F.2d 344, 350 (2d Cir. 1993)*). Motions to seek leave to amend are ultimately within the
discretion of the district courts, Foman, 371 U.S. at 182, but they should be handled with a
"strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc., 659 F.3d*
*208, 212-13 (2d Cir. 2011) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)*).
Indeed, upon granting a motion to dismiss, the "usual practice" in this Circuit is to permit
amendment of the complaint. See, e.g*., Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir.*
*1990); In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig., No. 07 Civ. 10453 (RWS),*
*2011 WL 4357166, at \*2-3 (S.D.N.Y. Sept. 13, 2011)* (noting a "strong preference" in favor of
granting leave to amend and collecting cases). Nevertheless, amendment "is not warranted absent
some indication as to what [plaintiffs] might add to their complaint in order to make it
viable." *Shemian v. Research In Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014)*(citations
omitted)."   *Telemaque v. MARRIOTT INTERNATIONAL, INC., Dist. Court, SD NY 2016*


### POINT I - THE COURT SHOULD DENY CHASE'S MOTION FOR JUDGEMENT ON THE PLEADINGS (AS AMENDED) BECAUSE THE COMPLAINT CLEARLY STATES VIABLE CLAIMS FOR RELIEF

The plaintiffs plead factual content that allows the Court to draw the reasonable inference
that plaintiff is entitled to relief.    Specifically, both the contract claim, and the breach of
fiduciary duty claim are viable claims for relief.

### C.  Defendants Wrongly Claim that Plaintiffs Fail to Identify the Provisions of the Contract that Have Been Breached  -   The Amended Complaint Clearly Identifies the Specific Contract Terms that have been Breached

Defendants effectively make three arguments 1) that there is no allegation that Ms.
Chasman's contract applies the same rate to her beneficiaries, 2) the Plaintiffs are subject to new
contracts, that do not include this evergreen provision, and 3) the CDs are "cash instruments"
and these contract provisions do not apply to the Plaintiffs. Each of these arguments is
misplaced. (These claims and arguments are actually made in paragraphs 33 and 34 of the

amended complaint.[2])

     There are two arguments that the Evergreen provisions of Ms. Chasman's contract transferred to her beneficiaries as a matter of law.

### 6. First Contractual Claim Based on Decedent's Contract and Rights of Successors Under General Terms

     The first is that the very terms of the Deposit Agreements offered by the Defendant's indicate that assignors and successors are bound by the terms.  See Defendants' Exhibit 1, page 20. "This Agreement shall be <u>binding on your personal representative, executors, administrators, successors</u>. The <u>benefits and responsibilities</u> of this Agreement shall also transfer to and be binding upon our successors and assigns." Defendants have conceded the Evergreen provision applied to Ms. Chasman and, that as indicated in the 1991 letter, it would survive any automatic amendment of general terms.  Chase and its predecessors are presumed to have amended its contract terms many times between 1991 and 2008, and the Evergreen provision survived each attempted amendment.)[3]   Exhibit 1 makes clear that the Evergreen provision that benefited Ms. Chasman survives to the successors and assigns of Ms. Chasman.   This argument is indicated in paragraph 33 of the amended Complaint (inherited as successors).  Plaintiffs believe that this successor and assigns provision is common to all of the deposit agreements and similar contracts from at least the 1990s to the present.

### 7. The Second Contractual Claim is the 2009 Inherited IRA Contract Including the 1991 Evergreen Term by Reference

     The second argument is that the 2009 Contracts signed by each of the Plaintiffs to

---

[2] These contract points are less clearly made in paragraphs 13 and 16 of the original complaint. Paragraphs 33 and 34 refer to the transfer of the decedent's contracts as a matter of law and contract (33), and the new IRA agreements that include the Evergreen interest rate terms of the inherited Certificate of Deposit (34).

[3] Exhibit 1 is "Account Rules and Regulations" effective 7/20/2008.  Exhibit 2, is the same title effective 12/31/2008, and has identical terms on page 20. Exhibit 3, same title, effective 1/01/2011, has the same terms on page 21. Exhibit 4 is "Deposit Account Agreement" effective 2/01/2012, has similar terms in paragraph I, subparagraph 13, page 18, but contains new language regarding assignees, in contrast to executors and successors.  Exhibit 5, 6 and 7 are similar, but not relevant since all are past the dates in 2008-2009 when the Plaintiffs became successors to the decedent.

establish the inherited accounts clearly indicates that the terms of the 1991 Letter are to be carried over to the new accounts, or more clearly, the creation of the new accounts does not override the original contract terms and the assignment of the beneficial rights by the successor provisions on death as a matter of law and contract.   While the 2009 Addendums are not as clear as an attorney may prefer when viewed as independent contracts, when read with the terms of the 1991 letter, the intent to retain the 1991 Evergreen contract rights is quite clear.   Contractual interpretation of handwritten and hand typed specific terms over general boilerplate determine that the Addendums should be accepted as contractual terms that override the general boilerplate. See Plaintiff's motion to amend and exhibit 1 attached thereto.

### 8.   The Defendants Argue Wrongly that the Certificates of Deposit Are Not Contractual in Nature

Finally, Defendants argue that terms like  withdrawal" and "distribute", are determinative, and that the CD is not a contract subject to its terms.   Defendants' motion at p 7 and pages 13-14.[4]   Defendants are accurate only as far as they describe the legal status of a Certificate of Deposit.   Yes, it is an indication of a deposit, but it is a contract, governed by its terms. [5]

> "A certificate of deposit ordinarily is defined as a written acknowledgment by a bank or banker of the receipt of a sum of money on deposit that the bank or banker promises to pay to the depositor, to the order of the depositor, or to some other person or to his or her order, whereby the relation of debtor and creditor between the bank and the depositor is created. <u>A certificate of deposit is a contract generally created and terminated according to its terms</u>." *10 Am. Jur. 2d Banks and Financial Institutions § 646.*

The argument that the Certificate of Deposit is a security, and subject to security fraud rules, is supported by 2nd Circuit law, and further supports the claims for Breach of Fiduciary

---

[4]  This argument is mysterious, since a key argument made by defendants is that the contract terms of the Certificate of Deposit permit the bank to renew the CD at then current instead of the Evergreen rate.
[5]  Defendants cannot argue the benefit of both sides of this argument that a certificate of deposit is not a contract, but the terms of the contract required use of the renewal date interest rate.   Defendants selectively cite terms of the contracts that they consider to be in their favor, but at the same time, argue that the Certificate of Deposit is not a binding contract for purposes of succession under the law and the succession terms of the contract itself.  The law is clear that a CD terms are a contract binding on its parties. See above.

duty, since the Defendant custodian permitted the alteration of the Certificate of Deposit on transfer from decedent to successor.  The conclusion that the Certificate of Deposit is a security has little impact on the legal argument that it is contract, and that the successors' rights are determined by the contract.   Since this may have an impact at later stage of this case, this argument is refuted here.

A Certificate of Deposit is a security under securities law, as stated by the 2nd Circuit: [6]

> "In *Marine Bank,* the reason for exempting certificates of deposit from the securities acts was to eliminate double coverage when the Glass-Steagall Act and the securities acts overlap. Were we to find the CDs sold through this CD Program not to be \*242 covered by the federal securities laws, a gap would exist in the regulatory scheme that would strip the investor of needed federal protection. The "content of the instruments in question, the purposes intended to be served, and the factual setting as a whole" make this an appropriate case for finding these instruments to be within the definitions of "security." *See Marine Bank,* 455 U.S. at 560 n. 11, 102 S.Ct. at 1225 n. 11. *See also* H.R. No. 626(I), 97th Cong., 2d Sess. 9–10, *reprinted in* 1982 U.S.Code Cong. & Ad.News 2780, 2788 (*Marine Bank* left "open the question of whether a certificate of deposit could be a security in another context"). Therefore, we hold that the certificates of deposit issued and sold pursuant to defendant Merrill Lynch's CD Program are "securities" for purposes of the antifraud provisions of both Acts."   *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 756 F.2d 230 (2nd Cir. 1985).*

## 9.  If A Contract Is Unclear from The Face Of The Agreement The Contract Terms Are Question Of Fact And Unsuitable For Summary Judgement

While plaintiffs argue that their rights as successors in interest are clear as a matter of law, if there is any doubt as to the interpretation of the contract documents when read together, then the terms of the contract are the question of fact.  Questions of fact are to be determined by the fact-finder (jury, in this case), after discovery and trial, and are not suitable for determination on summary judgement or judgement on the pleadings.

> "Under New York law, "if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence." *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir.

---

[6]   A later amendment to this complaint may include a claim regarding securities fraud regarding the attempt by Defendants to alter the terms of a CD in contradiction of its terms.  Claims for breach of the NY warranties of good faith and fair dealing may also be included.

2005) (internal quotation marks omitted). But if "the intent of the parties can[not]
be ascertained from the face of their agreement," the contract is ambiguous and its
interpretation presents a question of fact. *Id.* (internal quotation marks omitted).
*Spinelli v. National Football League. 903 F.3d 185 (2nd Cir. 2018).*
See also *Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F3d 63 (CA2
2011).* If extrinsic evidence is presented, the determination of its meaning is a
matter for a trier of fact, although if there is no extrinsic evidence, the question
remains a matter of law.

Whether an ambiguity exists is a question of law to be decided by the court, while the
interpretation of an ambiguous contractual term is a matter for the factfinder . *Lockheed Martin
Corp. v. Retail Holdings, N.V., 639 F3d 63 (CA2 2011).*

### 10. If Not Clearly in Favor of the Plaintiffs, The Contract Terms are Ambiguous and for that Reason, Not Determined on Motion on Pleadings

Because of the complexity of the original contract terms, 2009 inherited IRA agreements
and performance for over 30 years, determining the terms of this contract cannot be determined
solely by review of the face of the agreement(s). Two additional legal doctrines shed additional
light on the ambiguity of the two contracts.

    *c.* Two or more of these documents can and should be read together to include the
contract terms, along with the performance of the parties after execution of the
original contract (and despite repeated amendments of the underlying contract
terms by Chase issuing updated terms, which may even include an integration
clause which the parties ignored.)  It is commonly accepted in NY contract law
that two documents, even if executed at different times, can be part of a single
contract and should be interpreted together.  "Factors that a court will consider in
determining whether two documents should be viewed as one contract include: do
they have the same parties; do they have the same purpose; are they
interdependent; does one cross-reference the other; and  was one incorporated in
the other.   In determining whether to construe two documents together, a key
factor is whether the documents are interrelated and codependent."  *28 N.Y.
Prac., Contract Law § 8:28.*

### d.  Course of Conduct Also Shows Consent to Evergreen Contract Terms Even in Inherited Accounts -  Especially Conduct after Execution of an Agreement

Along with the 1991 Letter clarifying the terms of the Certificate of Deposit as a contract,

the conduct of the parties must be considered as assent to this contract term.  The Defendants are not in the business of paying interest rates well above market rates unless required to do so by contract. The conduct of defendants, in agreement with the terms of the 1991 letter, make the terms of the letter a binding part of the underlying agreement. See *Tractebel Energy Marketing Inc. v. AEP Power Marketing Inc. 487 F 3d 2nd Cir. 2007).*   While Defendants may argue that the contractual documents regarding the evergreen interest rate are not sufficiently clear, the conduct of the parties clearly indicate recognition of the Evergreen term as part of the underlying contract.  The 2nd Circuit in Tractebel held,

> "[T]he existence of a contract may be established through the conduct of the parties recognizing the contract." *Apex Oil Co. v. Vanguard Oil & Serv. Co.,* 760 F.2d 417, 422 (2d Cir.1985). "In determining whether the parties' conduct is consistent with the existence of a binding contract, it is necessary that the totality of all acts of the parties, their relationship and their objectives be considered." *H/R Stone,* 660 F.Supp. at 356 (internal quotation marks, citation and brackets omitted). Upon review of TEMI's conduct in the years after it signed the PPSA, it is clear that TEMI understood the PPSA to be binding and enforceable." *Tractebel Energy Marketing Inc. v. AEP Power Marketing Inc. 487 F 3d 2nd Cir. 2007.*

The Second Circuit, quoting the Restatement (Second) of Contracts, has noted a course of dealing: may determine  the meaning of the language of a contract; may incorporate into the contract an agreed but unstated term; and does not need to be consistent to be used in giving meaning to contract language. *Ward v. National Geographic Society, 284 Fed. Appx. 822 (2d Cir. 2008)* quoting Restatement Second, Contracts § 223, comment b.   "Where the contract is ambiguous, the Court must look to the course of dealings between the parties …"). *Intercargo Ins. Co. v. M/V "Neptune Jade", 1996 WL 325616, *2 (S.D. N.Y. 1996)*  Evidence of the parties' course of dealing during their business relationship may be used to assist  the court's interpretation of ambiguous language. *Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC, 2009 WL 1803458 (S.D. N.Y. 2009), judgment aff'd, 402 Fed. Appx. 623 (2d Cir. 2010).*

Not only did Chase rollover the Evergreen interest rate correctly in 2009, it did so again in 2019 on the passing of Mr. Richard Chasman.  Mr. Richard Chasman (father of the Plaintiffs) passed away in 2018.  His IRA account holding an Evergreen rate Certificate of Deposit remained dormant and untouched by the Plaintiffs even after they received notices from Chase regarding the account.  Finally, in 2019, Chase, on its own accord, created new accounts in the names of the Plaintiffs as beneficiaries of Mr. Richard Chasman and appropriately assigned the

new accounts the Evergreen interest rate of the late Mr. Chasman.  See Exhibits X and Y showing screenshots of these new accounts.  The Plaintiffs never signed any forms or agreed to any new account documents.  Chase acted on its own pursuant to the successor provision of the existing CD and account contracts.

As previously noted by both counsel, Defendants extended the Evergreen interest rate to the inherited accounts from Ms. Chasman in 2009.  It did so again, Once may be a mistake, but doing it 100 percent of the known times is a course of conduct that indicates how Chase views the account roll over procedures and enforcement of the old account terms.[7]  The Certificate of Deposit of the late Mr. Richard Chasman was rolled over into inherited accounts also held by the Plaintiffs and retained the same Evergreen 12 percent interest rate. These accounts were created without the Plaintiffs completing any new contracts.  This strongly supports the arguments that 1) Chase did not renew the Evergreen interest rate in 2009 by mistake, and 2) that successors at law of a certificate of deposit receive the benefit of all of the contractual terms, including the Evergreen interest rate.

### D.  The Amended Complaint Clearly States a Claim for Breach of Fiduciary Duty  - Defendants Wrongly Claim that Contract Terms Bar Such Duty –

### 3.  The Amended Complaint Alleges a Trust (and fiduciary)  Relationship Based on the Internal Revenue Code Definition of an IRA Account  –  And Supported by Case Law

Defendants argue that as a matter of law, that fiduciary duties can be disclaimed by contract between the parties, without specifically addressing whether an IRA Trustee or Custodian has been found to have a fiduciary duty.   (Plaintiffs do not contest the claim of contractual disclaimer, just that courts have found a fiduciary duty and whether the disclaimer is effective in the face of the statutory definition of an IRA trustee or custodian.)  Defendants attempt to extend the general disclaimer law in NY to IRA trustees but fail to address the case law more directly on the issue.

The defendants attempt to use a disclaimer to override the statutory basis of the role

---

[7]  This is the strongest argument for discovery into how Chase has resolved this issue in the past and how often Chase rolls a Certificate of Deposit into a beneficiary's account according to its contractual obligations.  Course of conduct can be a persuasive fact in determining the meaning of contract.

of IRA trustee or custodian.  "The accounts at issue were IRAs, which by definition in the Internal Revenue Code are "trust[s] created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." *26 U.S.C. § 408(a)* (2012)."[8] *UBS Financial Services, Inc. v. Alberti, 94 Mass. App. Ct. 180 2018.*

The defendants are in the uncomfortable position of arguing that the accounts were not trusts, in violation of their duties to operate the accounts as qualifying under the Internal Revenue Code, or they were trusts, but somehow trusts without fiduciary duties. (The very definition of a trust creates a fiduciary duty.)

Note that Plaintiffs are not contending that there is a fiduciary duty for investment management, just a custodial duty to maintain and enforce existing contracts held in the account.[9]

A court, applying New York law, has clearly found a fiduciary duty for an IRA trustee to a <u>Beneficiary</u> of an account, (in contrast to the account owner).  The case law used by Defendants argues solely regarding the duties created by the contractual rights to the account owner, not the beneficiaries of the account.   This fiduciary relationship is created by federal statute. (Although the federal statute does not create a legal right of enforcement, that enforcement right is left to state law.)  The analysis of the Court is quite clear, and contrary to the effort to disclaim this fiduciary role by contract. Note, of course, that Plaintiffs stand as beneficiaries of the original IRA custodian, not the original contracting party.

> To state a claim for breach of fiduciary duty, a plaintiff must "allege that (1) [the] defendant owed [him or her] a fiduciary duty, (2) [the] defendant] committed misconduct, and (3) [the plaintiff] suffered damages caused by that misconduct*." Burry v. Madison Park Owner LLC, 84 A.D.3d 699, 700, 924 N.Y.S.2d 77 (N.Y. 2011).* Accord NRT New York, LLC v. Morin, 147 A.D.3d 589, 589, 48 N.Y.S.3d 56 (N.Y. 2017).  In both New York

---

[8] 26 USC 408(a) "(a)Individual retirement account.  For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:…

[9] Contrary case law sometimes argues that a fiduciary duty exists, but for self-directed accounts, this duty does not extend to investment management.  The fiduciary duty alleged in this case is custodial in nature - basic and ministerial – to  collect and enforce existing contract under the Certificate of Deposit existing in the account.

and Massachusetts, "brokers for nondiscretionary accounts do not owe clients a fiduciary duty." *Celle v. Barclays Bank P.L.C., 48 A.D.3d 301, 302, 851 N.Y.S.2d 500 (N.Y. 2008)*.  Kenney's accounts were nondiscretionary and thereby imposed no fiduciary duty on UBS with respect to him.  [**343]  See *Barrett v. Grenda, 154 A.D.3d 1275, 1278, 62 N.Y.S.3d 673 (N.Y. 2017)* (financial institution holding self-directed IRA "owed no fiduciary duty to plaintiff" owning account). That is not so, however, for Aliberti as a beneficiary.

Rather, "[a] fiduciary relationship 'exists between two persons when one of them is under a [***12]  duty to act for … the benefit of  [*188] another upon matters within the scope of the relation.'" *EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 19, 832 N.E.2d 26, 799 N.Y.S.2d 170 (2005)*, quoting Restatement (Second) of Torts § 874 comment a. The accounts at issue were IRAs, which by definition are "trust[s] created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." 26 U.S.C. § 408(a) (2012). Although 26 U.S.C. § 408 does not create any private right of action for Aliberti here, it establishes UBS as a trustee holding the IRAs for the exclusive benefit of Aliberti following Kenney's death and in accordance with certain contractual obligations.   A trustee is a fiduciary under New York law, see N.Y. Estates, Powers and Trusts Law § 1-2.7, which at the minimum suggests a common-law fiduciary duty owed to Aliberti. See EBC I, Inc., supra at 21.

Here, the essential elements of a fiduciary relationship — reliance, de facto control, and dominance, see People v. Coventry First LLC, 13 N.Y.3d 108, 115, 915 N.E.2d 616, 886 N.Y.S.2d 671 (2009), are most telling. UBS exercised complete control over the IRAs following Kenney's death, and Aliberti — a named beneficiary — was entirely reliant on UBS for access to the funds and any information about them. This alone is sufficient to establish a fiduciary relationship. See *Shurka v. Shurka, 100 A.D.3d 566, 566, 955 N.Y.S.2d 12 (N.Y. 2012)* ("appellant has administered and controlled the payment of the promissory notes on which defendant is a payee, thus creating a fiduciary [***13]  relationship between defendant and appellant").   *UBS Financial Services, Inc. v. Aliberti, 94 Mass. App. Ct. 180 2018.*

## 4.  The Question of Whether There is Fiduciary Duty is a Question of Fact – Not the Basis for a Motion on Pleadings

Even if this Court cannot find a clear fiduciary duty by the IRA trustees,  it should find that it cannot dismiss the claim based on the lack of a fiduciary duty, since the existence of a fiduciary duty is a question of fact, and cannot be decided against the Plaintiffs in this proceeding.

As the SDNY has ruled previously, in a very similar case involving a claim of breach of fiduciary duty by an IRA trustee, it is has found that the issue of whether or not a fiduciary duty exists is a question of fact, and cannot be determined on a motion on the pleadings.  This court held in a 2006 case " whether a fiduciary duty exists "normally depends on the facts of a particular relationship, [and] therefore a claim alleging the existence of a fiduciary duty is not subject to dismissal."  *FG v. MacDonell, 696 A.2d 697 (N.J. 1997).*

A clear statement of the case law as applied to the question of whether or not an IRA trustee had a fiduciary duty is best stated by citing a recent SD NY case from 2011, so I will not attempt to paraphrase, other than to emphasize the conclusion "As noted above, it is inappropriate at the motion to dismiss stage to assess whether, as a matter of fact, Defendants actually owed fiduciary duties to Plaintiffs. … Plaintiffs have sufficiently alleged the existence of a fiduciary relationship through Defendants' roles as trustees and custodians of Plaintiffs' IRAs.  Therefore, Plaintiffs' breach of fiduciary duty claims survive.":

> Plaintiffs correctly note that the extent to which Defendants owed fiduciary duties to Plaintiffs, and then breached those duties, are questions of fact that should not be resolved on a motion to dismiss. *See Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank,* 261 F.R.D. 13, 26 (S.D.N.Y.2009) ("New York courts generally avoid dismissing a claim of breach of fiduciary duty ... because it usually involves a question of fact: whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence"); *Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 274 (S.D.N.Y.2006) (whether a fiduciary duty exists "normally depends on the facts of a particular relationship, [and] therefore a claim alleging the existence of a fiduciary duty is not subject to dismissal"); *F.G.,* 696 A.2d at 704.

> However, under New York law, "a cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand." *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.,* 76 A.D.3d 310, 901 N.Y.S.2d 618, 636 (1st Dept.2010)(citing *250 Granirer v. Bakery, Inc.,* 54 A.D.3d 269, 863 N.Y.S.2d 396, 399 (1st Dept.2008); *William Kaufman Org. v. Graham & James,* 269 A.D.2d 171, 703 N.Y.S.2d 439, 442 (1st Dept.2000)). New Jersey and California have similar pleading rules. *See Jack v. Concordia Homes of Cal., LLC,* No. D049863, 2008 WL 802605, at *6 (Cal.Ct.App. Mar. 27, 2008) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.") (citation omitted); *Stewart Title Guar. Co. v. Greenlands Realty, L.L.C,* 58 F.Supp.2d 370, 386–87 (D.N.J.1999) ("[the] tort claim for breach of fiduciary duty arises out of its title insurance policy ... [t]hus, [the] claim ... for breach of fiduciary duty sounds in contract, rather than in tort."). *See also Mandelbaum,* 09 Civ. 752, 787 F.Supp.2d

at 1253, 2011 WL 1225549 at *21 (dismissing breach of fiduciary duty claims under Colorado law where they overlapped with breach of contract claims and where the defendants did not have independent fiduciary duty claims because IRC § 408 did not provide them and state law did not govern IRAs).

However, "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Mandelblatt v. Devon Stores,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dept.1987). In *Centro Empresarial,* the Court held that the relevant fiduciary duties arose from the contract at issue, but that they existed independently of that agreement and thus were not subject to dismissal on duplicity grounds. 901 N.Y.S.2d at 636. *See also Prohealth Care Associates, LLP v. April,* No. 15830–03, 4 Misc.3d 1017(A), 2004 WL 1872915, at *5 (N.Y.Sup. Aug. 18, 2004) ("The same conduct may constitute both a breach of contract and a breach of a fiduciary duty.") (citing *Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.,* 283 A.D.2d 448, 729 N.Y.S.2d 142 (2nd Dept.2001); *Davis v. Dime Savings Bank of New York,* 158 A.D.2d 50, 557 N.Y.S.2d 775 (3rd Dept.1990)). Similar exceptions exist under California and New Jersey law for independent fiduciary duty claims. *Jack,* 2008 WL 802605, at *6 (under California law, "[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies") (quotation marks and citation omitted); *Stewart,* 58 F.Supp.2d at 387 (indicating an exception under New Jersey law where a defendant takes on an obligation independent of the contractual obligations).

…. ("Under this standardized form contract and federal law, Defendants owed minimum federal fiduciary duties to each Class member… Despite these apparent overlaps, Plaintiffs contend that Defendants owed them independent fiduciary duties because of their roles as IRA trustees.

As noted above, it is inappropriate at the motion to dismiss stage to assess whether, as a matter of fact, Defendants actually owed fiduciary duties to Plaintiffs. *See Musalli,* 261 F.R.D. at 26. Plaintiffs have sufficiently alleged the existence of a fiduciary relationship through Defendants' roles as trustees and custodians of Plaintiffs' *251 IRAs.8 Therefore, Plaintiffs' breach of fiduciary duty claims survive.   *Grund v. Delaware Charter Guarantee & Trust Co., 788 F. Supp. 2d 226 (S.D.N.Y. 2011)*

Finally, Defendants claim that breach of this fiduciary duty is not sufficiently plead. Plaintiffs clearly plead that Defendants failed to enforce the contract rights of Plaintiffs to assure that the 12 Percent Evergreen interest rate of decedent was paid to Plaintiffs as required under the successor rights of the decedent's contract. This is clearly stated in paragraphs 47 and 48.

### POINT II  - The Court Should GRANT the Plaintiff's Motion to Amend Because the Defendant's Argument of Futility are Misplaced and Dependent on False and Misleading Statements – and the Amendment is Not Futile

**B.   Continuing Wrong Doctrine Is Wrongly Applied by the Defendants**

Defendants wrongly argue that Plaintiffs rely on the Continuing Wrong doctrine to resolve the statute of limitations issue with the surviving claims of breach of contract and breach of fiduciary duty.

The amended complaint clearly cite the 2015 and 2018 failures of the defendants to renew the Certificates pursuant to the contracts, and, as a fiduciary to enforce the contract to ensure renewal.

The breach of a contract in 2009 does not unilaterally modify it and prevent the breach of contract in 2015 and 2018 from being subject to legal enforcement.  Breach of a contractual obligation does not alter the underlying contract and magically convert later breaches into actual contractual compliance.   In contrast to the assertions of the Defendants, any wrong that accrued in 2012 can ALSO accrue in 2015 and 2018, each time the contract is breached.  If the Defendants' interpretation of contract law were reality, any party could breach a contract and unilaterally rewrite the terms.

The 2015 and 2018 renewal dates are respectively three years and 3 months before the filing date of this action.  The 2018 breach is within any contractual or statutory period of limitations.

The description of the "Continuing Wrong" doctrine by the Defendants is accurate, but the application to the facts is terribly mistaken.  (See Defendants' motion on pleadings pages 19-20.)

Each breach of the contract, (and breach of the fiduciary duty to enforce the contract) is a distinct wrong. Each distinct wrong occurred separately.

Plaintiffs are not alleging that some wrong occurred in 2012 and never occurred again – but that an existing contract was breach in 2012, and then again in 2015, and again in 2018.[10]

---

[10] Defendants make the argument that somehow, each violation is not an actionable, but only the original breach of contract is subject to a contract claim.   "In other words, Plaintiffs absurdly argue that any statutory and contractual limitations periods must re-commence each and every time, potentially ad infinitum, that the Beneficiary IRA CDs roll over and Chase does not apply a 12% rate."

Plaintiffs actually argue that this is true – each violation causes a new cause of action.  Imagine slightly different facts:  this contract is a 30-year contract for delivery of an aircraft carrier every three years. The breach of contract in year 12 is separate from the breaches in year 15 and 18.  Each breach is subject to

Defendants wrongly describe Plaintiffs as alleging a single wrong.

Defendants (pages 20-21) allege that they unilaterally modified its contractual by refusing to honor it and giving notice in 2012.  Plaintiffs allege that the contractual obligation is ongoing, and that breaches occurred repeatedly, making a textbook case of "continuing wrongs."

Expressed in this manner, the excellent explanation provided counsel for defendants actually correctly explains WHY the Doctrine of Continuing Wrongs applies to this case. Plaintiffs allege a series of continuing breaches of its contractual rights and the doctrine would appropriately permit the extension of the statute of limitations to the original breach in 2012. [11]

**B Defendant's Statement Regarding Identification of Contract Provision is Factually Wrong  - Specific Contract Provisions are Described – see above**.

Defendants wrongly allege that the proposed amendment to the Complaint is futile based on the failure to identify any contractual provisions being breached. The amended complaint and exhibits clearly point to the contract of the decedent (including the 1991 letter, and the frequently amended terms and conditions),  and the 2009 inherited IRA contract, as modified by the addendum of the Plaintiffs.

---

legal enforcement.  Failure to bring a timely claim for the breach in year 12 does not prevent a claim for the breaches in years 15 and 18. (Assume that US Navy is happy with the ships delivered in years 3, 6 and 9).

The fact that the underlying contract is "Evergreen" does not make it substantially different.  It is a long-term contract with opportunities for enforcement whenever breaches occur.

Issuing an "Evergreen"  interest rate deposit contract is certainly not recommended, but it is not unknown. Please note that various countries, such as the UK during World War I, and companies have issued "Perpetual bonds" – that never mature but always pay interest.  On a similar note,  Argentina recently issued 100-year bonds, as did Walt Disney and Coca Cola. Why countries and corporations issue perpetual or 100 year bonds or similar bonds or contracts is an interesting question, that these contracts exist and are enforceable is not in question.  Of course, the contract is only enforceable as long as the Defendants are solvent.   Plaintiffs do not believe the contract would survive bankruptcy filing since they would be cancelled under the bankruptcy discharge statutes.   These Evergreen interest rate Certificate of Deposit contracts are just another interesting and strange example.

[11] I must note that the only impact of the doctrine of continuing wrongs on this case is on some of the damages that accrued from 2012 to 2018, depending on how the statute of limitations is applied to various claims and deadlines.   It does not impact future claims to the contractual Evergreen interest rate from 2018 onward for the foreseeable future.

See the discussion above for why the amendment of the contract claim is not futile for failing to point to specific contractual provisions.

**C  Amendment of Breach of Fiduciary Duty Claim are Sufficient to Show a Breach of the Duty Described – the Duty to Preserve the Contract / Security Rights of Asset in the Account.**

**D – The Plaintiffs Abandon the Proposed New Causes of Action as Time Barred**

The defendants argue that the new state law claims regarding Consumer fraud are barred by the statute of limitations and other issues.  The Plaintiffs abandon these claims and consent to the dismissal of these claims on the pleadings without prejudice.

WHEREFORE, for the reasons stated above, Plaintiff prays that this Court GRANT its motion to amend the complaint in accordance with prevailing Supreme Court and 2nd Circuit law, and in light of the strong preference to grant a move to amend, and that the Court DENY the Defendants' motion for judgment on the pleadings, since the surviving claims are both well plead, and are sufficiently factual that a motion for judgment on pleadings cannot be granted.

Finally,  Plaintiffs ask that this case be granted a scheduling conference and that discovery be ordered.

Respectfully submitted,

<u>/s/  Stuart Weichsel</u>

Stropheus LLC

800 Third Avenue, 28th

New York NY 10022

Attorney for Plaintiff
917-562-4697
 Stuart.Weichsel@Stropheus.com
646-304-7959 (fax)
NY State Bar Number - 2630655