```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
David Chasman, Haim Seth Chasman,

                    Plaintiffs,
                                              MEMORANDUM & ORDER
          - against -
                                              18 Civ. 6681 (NRB)
JP Morgan Chase Bank, NA
Chase Bank, and related subsidiaries,
Successor by merger of First National
Bank of Chicago,

                    Defendants.
----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

David Chasman and Haim Seth Chasman (together, "plaintiffs") move for leave to amend their complaint against JP Morgan Chase Bank, N.A. ("defendant"). Defendant cross-moves for judgment on the pleadings. The Court grants defendant's motion and denies plaintiffs' motion for the reasons stated herein.

### BACKGROUND

In 1983, Rose Ann Chasman invested $3,000 in an individual retirement account certificate of deposit (the "IRA CD") with First National Bank of Chicago ("First National"). Compl. ¶ 8. Plaintiffs allege that the IRA CD had an initial three-year term at an interest rate of 12% per annum, and that it was renewable in

1

perpetuity for three-year terms at the 12% interest rate. Compl. ¶ 8.

The complaint alleges that Ms. Chasman thereafter renewed the IRA CD with First National, and, after First National merged into Bank One, completed a new IRA application and agreement and, in so doing, asserted an entitlement to the perpetual 12% interest rate. Compl. ¶ 9-10; Answer ("Ans.") ¶ 10. Defendant later acquired Bank One. Compl. ¶ 6.

Ms. Chasman passed away in August 2007. After her death, plaintiffs -- Ms. Chasman's sons and the beneficiaries of her IRA CD -- each executed with defendant a form titled "Traditional IRA Election of Payment by Beneficiary" (the "Beneficiary Form") pursuant to which they "request[ed] a withdrawal" from Ms. Chasman's IRA due to her death. See Declaration of Richard Farmer ("Farmer Decl."), Exs. 1 & 2 at 1. In the section of the Beneficiary Forms titled "Beneficiary Acknowledgement," each plaintiff "authorized and directed [defendant] to distribute from my share of the deceased's IRA in the manner requested above," and "agree[d] to the terms that govern my share as contained in the IRA Custodial Agreement and Disclosure Statement [(the 'Custodial Agreement')] and Account Rules and Regulations." Farmer Decl., Exs. 1 & 2 at 3 (emphasis deleted).

The Account Rules and Regulations in effect when plaintiffs opened their Beneficiary IRA CDs included the Deposit Account Agreement, which provided that "[f]or automatically renewable CDs, your CD will automatically renew for the same time period as the initial term, and thereafter for successive like periods of time, with an interest rate then in effect on the renewal date for like term CD to be applicable during such time period." Declaration of Laura L. Deck ("Deck Decl."), Exs. 1 & 2 at 11. Meanwhile, under the Custodial Agreement, plaintiffs "acknowledge[d] and agree[d] that nothing shall be construed as conferring fiduciary status upon [defendant]." Farmer Decl., Exs. 9 & 10 at 3.

Pursuant to the Beneficiary Forms, defendant transferred plaintiffs' respective portions of the balance of funds in Ms. Chasman's IRA CD to separate Traditional Beneficiary IRA Certificate of Deposit accounts (the "Beneficiary IRA CDs"). See Compl. ¶¶ 13-14; Ans. ¶ 2. In 2009, defendant renewed each plaintiff's Beneficiary IRA CD at an interest rate of 12% per annum. Compl. ¶ 15; Ans. ¶ 15.

On January 13, 2012, defendant provided plaintiffs with notices that their Beneficiary IRA CDs were due to mature and automatically renew on January 30, 2012. Farmer Decl., Exs. 3 & 4. The notices stated the terms and conditions that would apply to the automatically renewed CDs, including that (1) the CDs would

3

renew "at the standard (non-special) interest rate in effect on the renewal date"; (2) that the standard interest rate in effect on January 13, 2012 was 0.35% APY; and, consistent with the Deposit Account Agreement, that (3) the CDs would "automatically renew for the same time period as the initial term, and thereafter for successive like periods of time, with an interest rate then in effect on the renewal date for like term CDs to be applicable during such time period." Farmer Decl., Exs. 3 & 4 at 1-2. Each plaintiff's Beneficiary IRA CD automatically renewed on January 30, 2012 at the standard interest rate of 0.35% per annum. Farmer Decl., Exs. 6 & 8.

On February 16, 2017, plaintiffs filed in this Court a complaint against defendant, which they amended on March 2, 2017. See Case No. 17 Civ. 1210, ECF Nos. 1 & 8. The amended complaint alleged that the IRA CD's alleged perpetual renewability at the 12% interest rate survived Ms. Chasman's death as well as the disbursement of the IRA CD's funds to plaintiffs, and that it therefore also applied to the Beneficiary IRA CDs. Based on this contention, the amended complaint asserted claims for breach of contract and breach of fiduciary duty for defendant's failure to renew the Beneficiary IRA CDs at an interest rate of 12% per annum on January 30, 2012. However, on July 17, 2017, plaintiffs voluntarily dismissed their amended complaint without prejudice

4

because they could not locate any contract governing the IRA CD. See id., ECF No. 21.

Then, on March 12, 2018, plaintiffs filed a virtually identical complaint in the Supreme Court of the State of New York, County of New York, which defendant removed to this Court on July 25, 2018.  Defendant answered plaintiff's complaint on August 1, 2018, and contended that it had no obligation, contractual or otherwise, to renew the Beneficiary IRA CDs at an interest rate of 12% per annum.  Ans. ¶¶ 15-16.  Plaintiffs conceded at an initial pretrial conference that they had still failed to locate any contract governing the IRA CD.  Before the Court is plaintiffs' motion for leave to amend their complaint and defendant's cross-motion for judgment on the pleadings.

**DISCUSSION**

**A. Judgment on the Pleadings**

1. Legal Standard

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "In deciding a Rule 12(c) motion, [the Court] employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)."  Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks omitted). Accordingly, "[t]o survive a Rule 12(c) motion, [the] 'complaint

5

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

2. Breach of Contract Claim

"Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Balk v. N.Y. Inst. of Tech., 683 Fed. App'x 89, 95 (2d Cir. 2017) (internal quotation marks omitted).[1]  However, "[i]n adjudicating express contract claims, a court cannot supply a specific obligation the parties themselves did not spell out." Sackin v. TransPerfect Global, Inc., 278 F.Supp. 3d 739, 750 (S.D.N.Y. 2017) (internal quotation marks omitted).  Accordingly, to plead a claim for breach of contract, plaintiffs "must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." Valentini v. Citigroup, Inc., 837 F.Supp. 2d 304, 327 (S.D.N.Y. 2011) (internal

---

[1] Because the parties "rel[y] on New York law to support their respective contentions," they impliedly consent to its application. Wm. Passalacqua Builders, Inc. v. Resnick Dev. S., Inc., 933 F.2d 131, 137 (2d Cir. 1991); see also Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (internal quotation marks omitted)).

6

quotation marks omitted); see also Berman v. Sugo LLC, 580 F.Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract.").

Plaintiffs assert a breach of contract claim for defendant's failure to renew plaintiffs' Beneficiary IRA CDs at 12% per annum on January 30, 2012. However, plaintiffs do not identify any contractual provision that defendant allegedly violated in doing so. Instead, they simply maintain that the IRA CD's alleged perpetual renewability at the 12% interest rate also applied to the Beneficiary IRA CDs. But plaintiffs have neither supplied nor quoted from any contract in support of this contention. See Sackin, 278 F.Supp. 3d at 750. In fact, the complaint does not even allege an agreement to that effect. Rather, the Deposit Account Agreement, which plaintiffs do not contest governs their Beneficiary IRA CDs, states that "automatically renewable CDs . . . will automatically renew . . . with an interest rate then in effect on the renewal date for like term CD to be applicable during such time period." Deck Decl., Exs. 1 & 2 at 11.

Plaintiffs' contention that the IRA CD's alleged perpetual renewability at 12% interest per annum also applied to the Beneficiary IRA CDs is therefore nothing more than a "'naked assertion[]' devoid of 'further factual enhancement'" that runs

7

headlong into the express terms of the Deposit Account Agreement. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).  They have accordingly failed to plead their breach of contract claim, and it is therefore dismissed.

3. Breach of Fiduciary Duty Claim

"'In New York, in order to establish a breach of fiduciary duty, there must be a fiduciary duty owed.'" LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F.Supp. 3d 504, 523 (S.D.N.Y. 2014) (quoting Summit Prop. Int'l, LLC v. Ladies Prof'l Golf Ass'n, 07 Civ. 10407 (LBS), 2010 WL 2382405, at *7 (S.D.N.Y. June 14, 2010)). "However, no fiduciary duty is owed where explicit contractual disclaimers of fiduciary duty apply." Id. (internal quotation marks omitted).  To be enforceable, a contractual disclaimer of fiduciary duties must be "sufficiently explicit." Valentini, 837 F.Supp. 2d at 326; see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 866 F.Supp. 2d 257, 269 (S.D.N.Y. 2012) (requiring that the disclaimer be "clear and unambiguous").  This requires the disclaimer to "explicitly reference fiduciary duties." LBBW Luxemburg S.A., 10 F.Supp. 3d at 523.

Under the Custodial Agreement, plaintiffs "acknowledge[d] and agree[d] that nothing shall be construed as conferring fiduciary status upon [defendant]." Farmer Decl., Exs. 9 at 3 & 10 at 3. This disclaimer of a fiduciary relationship is sufficiently

8

explicit to negate plaintiffs' allegations that defendant owed plaintiffs a fiduciary duty. See, e.g., Valentini, 837 F.Supp. 2d at 326 (enforcing disclaimer that "'[defendant] is not acting as fiduciary for' [plaintiff]"); see also, e.g., Summit Prop. Int'l, LLC, 2010 WL, at *7 (upholding disclaimer that "'[n]othing herein contained shall be construed to place the parties in the relationship of partners, joint ventures, principal and agent, or fiduciaries'").

Plaintiffs nonetheless contend that because 26 U.S.C. § 408(a), a provision of the Internal Revenue Code, defines an IRA as "a trust . . . created for the exclusive benefit of an individual or his beneficiaries," defendant was a "trustee" that owed plaintiffs fiduciary duties. Courts have repeatedly recognized, however, that § 408 merely treats certain IRAs as trusts for tax purposes, and that it imposes no fiduciary duties on IRA custodians. See, e.g., Hines v. FiServ, Inc., No. 08-cv-2569-T-30AEP, 2010 WL 1249838, at *3 (M.D. Fla. Mar. 25, 2010); Lewis v. Delaware Charter Guar. & Trust Co., No. 14 Civ. 1779 (KAM), 2015 WL 1476403, at *11 (E.D.N.Y. Mar. 31, 2015); In re Sunpoint Sec., Inc., Adv. No. 99-6073, 2006 WL 8426830, at *4 (Bankr. E.D. Tex. Apr. 17, 2006). Moreover, even if this supposed duty existed, plaintiffs have offered no reason why the Custodial Agreement's disclaimer would fail to negate it.

9

Accordingly, the parties have disclaimed any fiduciary duty between them, hence, plaintiffs' breach of fiduciary duty claim must be, and therefore is, dismissed.

**B. Leave to Amend**

Plaintiffs move for leave to amend their complaint as set forth in a proposed amended complaint (the "PAC") attached to their motion. The PAC adds various allegations and three causes of action. The Court denies leave to add the causes of action because plaintiffs expressly withdrew their request to add them in their briefing before the Court. ECF No. 38 at 23.

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." Nonetheless, the Court may deny a motion to amend if amendment would be futile. Dluhos v. Floating & Abandoned Vessel, Known as "New York", 162 F.3d 63, 69 (2d Cir. 1998). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)[.]" Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012).

As an initial matter, plaintiffs' request for leave to amend is essentially a request to file a third amended complaint. Indeed, plaintiffs not only filed an amended complaint in their

10

initial lawsuit against defendant, but they also filed the instant complaint after voluntarily dismissing their initial lawsuit. Another amended complaint would therefore constitute plaintiffs' fourth bite of the proverbial apple, which is impermissible. See, e.g., In re Am. Express Co. S'holder Litig., 39 F.3d 395, 402 (2d Cir. 1994) (affirming dismissal with prejudice in part because plaintiffs had two opportunities to amend their complaint).

In any event, the Court concludes that the PAC is futile to the extent it purports to identify contractual provisions that defendant allegedly breached. First, the PAC alleges that an account executive from First National sent Ms. Chasman a letter in 1991 that read, "[w]hile the 12% minimum renewal offer was intended for the first renewal only, I understand that you believed it applied to each three year renewal of the CD. Therefore, let me assure you that First Chicago will honor its commitment as originally understood by you. I will personally see that your three year CD receives a minimum rate of 12% for all future renewals of the three year term." PAC ¶ 10; ECF No. 32-3. This letter, however, fails to supply, let alone suggest, a contractual provision pursuant to which the IRA CD's automatic renewal at 12% interest per annum also applied to the Beneficiary IRA CDs.

Second, the PAC alleges that each plaintiff submitted with his Beneficiary Form an "addendum" that stated that "[t]hese

11

contract [sic] bear a coupon or [sic] 12% or so, which we expect to be transferred to us (50% to each of us)." PAC ¶¶ 16-17; Farmer Decl., Exs. 1 & 2 at 4. Plaintiffs contend that these addenda modified their agreement with defendant in the Beneficiary Form to apply the 12% interest rate to the Beneficiary IRA CDs.

However, "[c]ontract modification requires proof of each element requisite to the formation of a contract, including 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms,'" Kaplan v. Old Mut. PLC, 526 Fed. App'x 70, 72 (2d Cir. 2013) (quoting Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 715 N.E.2d 1050, 1053 (N.Y. 1999)), "[t]he first step" of which is "determin[ing] whether there is a sufficiently definite offer," Express Indus., 715 N.E.2d at 1053. Plainly, the addenda, which state only that plaintiffs "expect" an interest rate of "12% or so," are insufficiently definite to constitute an offer to modify the terms governing the Beneficiary IRA CDs.

The Court also deems the PAC futile to the extent it purports to include allegations establishing that defendant owed plaintiffs a fiduciary duty. The allegation that "fiduciary duties are un-waivable by contract" is a patently false legal conclusion. PAC ¶ 53. So, too, is the assertion that the Custodial Agreement's

12

fiduciary duty disclaimer "cannot be binding as a contract of adhesion," PAC ¶ 52, which contention plaintiffs expressly abandoned in their reply brief, ECF No. 38 at 16.

## CONCLUSION

For the reasons stated herein, the Court grants defendant's motion for judgment on the pleadings and denies plaintiffs' motion for leave to amend. Plaintiffs' complaint is accordingly dismissed with prejudice. The Clerk of Court is respectfully directed to terminate all motions pending in, and to close, this case.[2]

**SO ORDERED.**

Dated: New York, New York
January 13, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[2] Defendant requested oral argument pursuant to this Court's Individual Practices § 2.H. Given the bases on which the Court has resolved this motion, as well as the Court's finding in favor of the only party that requested oral argument, the Court declines to hear oral argument on this motion.

13